## TAFT *v.* BOWERS, COLLECTOR OF INTERNAL REVENUE.

## GREENWAY *v.* SAME.

Nos. 16 and 17. Argued April 26, 1928. Reargued October 9, 1928.—Decided February 18, 1929.

*Mr. Henry W. Taft,* with whom *Mr. Clarence Casti-more* was on the brief, for petitioner in No. 16.

472

474

475

*Mr. Hiram C. Todd,* with whom *Mr. Roger S. Baldwin* was on the brief, for petitioner in No. 17.

*Assistant Attorney General Mabel Walker Willebrandt* and *Mr. Edwin G. Davis,* with whom *Solicitor General Mitchell,* and *Messrs. Sewall Key* and *J. Louis Monarch* were on the brief, for respondent.

Mr. JUSTICE McREYNOLDS delivered the opinion of the Court.

Petitioners, who are donees of stocks, seek to recover income taxes exacted because of advancement in the market value of those stocks while owned by the donors. The facts are not in dispute. Both causes must turn upon the effect of paragraph (2), § 202, Revenue Act, 1921, (c. 136,

42 Stat. 227) which prescribes the basis for estimating taxable gain when one disposes of property which came to him by gift. The records do not differ essentially and a statement of the material circumstances disclosed by No. 16 will suffice.

During the calendar years 1921 and 1922, the father of petitioner Elizabeth C. Taft, gave her certain shares of Nash Motors Company stock then more valuable than when acquired by him. She sold them during 1923 for more than their market value when the gift was made.

The United States demanded an income tax reckoned upon the difference between cost to the donor and price received by the donee. She paid accordingly and sued to recover the portion imposed because of the advance in value while the donor owned the stock. The right to tax the increase in value after the gift is not denied.

Abstractly stated, this is the problem—

In 1916 A purchased 100 shares of stock for $1,000 which he held until 1923 when their fair market value had become $2,000. He then gave them to B who sold them during the year 1923 for $5,000. The United States claim that, under the Revenue Act of 1921, B must pay income tax upon $4,000, as realized profits. B maintains that only $3,000—the appreciation during her ownership— can be regarded as income; that the increase during the donor's ownership is not income assessable against her within intendment of the Sixteenth Amendment.

The District Court ruled against the United States; the Circuit Court of Appeals held with them.

Act of Congress approved November 23, 1921, Chap. 136, 42 Stat. 227, 229, 237—

" Sec. 202. (a) That the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, acquired after February 28, 1913, shall be the cost of such property; except that—
    "(1) . . .

"(2) In the case of such property, acquired by gift after December 31, 1920, the basis shall be the same as that which it would have in the hands of the donor or the last preceding owner by whom it was not acquired by gift. If the facts necessary to determine such basis are unknown to the donee, the Commissioner shall, if possible, obtain such facts from such donor or last preceding owner, or any other person cognizant thereof. If the Commissioner finds it impossible to obtain such facts, the basis shall be the value of such property as found by the Commissioner as of the date or approximate date at which, according to the best information the Commissioner is able to obtain, such property was acquired by such donor or last preceding owner. In the case of such property acquired by gift on or before December 31, 1920, the basis for ascertaining gain or loss from a sale or other disposition thereof shall be the fair market price or value of such property at the time of such acquisition; "

" Sec. 213. That for the purposes of this title (except as otherwise provided in section 233) the term ' gross income '—

"(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service . . . or gains or profits and income derived from any source whatever. The amount of all such items (except as provided in subdivision (e) of section 201) shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period; but

"(b) Does not include the following items, which shall be exempt from taxation under this title;

"(1) . . . (2) . . .

"(3) The value of property acquired by gift, bequest, devise, or descent (but the income from such property shall be included in gross income); . . ."

We think the manifest purpose of Congress expressed in paragraph (2), Sec. 202, *supra,* was to require the petitioner to pay the exacted tax.

The only question subject to serious controversy is whether Congress had power to authorize the exaction.

It is said that the gift became a capital asset of the donee to the extent of its value when received and, therefore, when disposed of by her no part of that value could be treated as taxable income in her hands.

The Sixteenth Amendment provides—

" The Congress shall have power to lay and collect taxes on incomes from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration."

Income is the thing which may be taxed—income from any source. The Amendment does not attempt to define income or to designate how taxes may be laid thereon, or how they may be enforced.

Under former decisions here the settled doctrine is that the Sixteenth Amendment confers no power upon Congress to define and tax as income without apportionment something which theretofore could not have been properly regarded as income.

Also, this Court has declared—" Income may be defined as the gain derived from capital, from labor, or from both combined, provided it be understood to include profit gained through a sale or conversion of capital assets." *Eisner* v. *Macomber,* 252 U. S. 189, 207. The " gain derived from capital," within the definition, is " not a gain accruing to capital, nor a growth or increment of value in the investment, but a gain, a profit, something of exchangeable value proceeding from the property, severed from the capital however invested, and coming in, that is, received or drawn by the claimant for his separate use, benefit and disposal." *United States* v. *Phellis,* 257 U. S. 156, 169.

If, instead of giving the stock to petitioner, the donor had sold it at market value, the excess over the capital he invested (cost) would have been income therefrom and subject to taxation under the Sixteenth Amendment. He would have been obliged to share the realized gain with the United States. He held the stock—the investment— subject to the right of the sovereign to take part of any increase in its value when separated through sale or conversion and reduced to his possession. Could he, contrary to the express will of Congress, by mere gift enable another to hold this stock free from such right, deprive the sovereign of the possibility of taxing the appreciation when actually severed, and convert the entire property into a capital asset of the donee, who invested nothing, as though the latter had purchased at the market price? And after a still further enhancement of the property, could the donee make a second gift with like effect, etc.? We think not.

In truth the stock represented only a single investment of capital—that made by the donor. And when through sale or conversion the increase was separated therefrom, it became income from that investment in the hands of the recipient subject to taxation according to the very words of the Sixteenth Amendment. By requiring the recipient of the entire increase to pay a part into the public treasury, Congress deprived her of no right and subjected her to no hardship. She accepted the gift with knowledge of the statute and, as to the property received, voluntarily assumed the position of her donor. When she sold the stock she actually got the original sum invested, plus the entire appreciation; and out of the latter only was she called on to pay the tax demanded.

The provision of the statute under consideration seems entirely appropriate for enforcing a general scheme of lawful taxation. To accept the view urged in behalf of petitioner undoubtedly would defeat, to some extent, the

purpose of Congress to take part of all gain derived from capital investments. To prevent that result and insure enforcement of its proper policy, Congress had power to require that for purposes of taxation the donee should accept the position of the donor in respect of the thing received. And in so doing, it acted neither unreasonably nor arbitrarily.

The power of Congress to require a succeeding owner, in respect of taxation, to assume the place of his predecessor is pointed out by *United States* v. *Phellis,* 257 U. S. 156, 171—

" Where, as in this case, the dividend constitutes a distribution of profits accumulated during an extended period and bears a large proportion to the par value of the stock, if an investor happened to buy stock shortly before the dividend, paying a price enhanced by an estimate of the capital plus the surplus of the company, and after distribution of the surplus, with corresponding reduction in the intrinsic and market value of the shares, he were called upon to pay a tax upon the dividend received, it might look in his case like a tax upon his capital. But it is only apparently so. In buying at a price that reflected the accumulated profits, he of course acquired as a part of the valuable rights purchased the prospect of a dividend from the accumulations—bought ' dividend on ' as the phrase goes—and necessarily took subject to the burden of the income tax proper to be assessed against him by reason of the dividend if and when made. He simply stepped into the shoes, in this as in other respects, of the stockholder whose shares he acquired, and presumably the prospect of a dividend influenced the price paid, and was discounted by the prospect of an income tax to be paid thereon. In short, the question whether a dividend made out of company profits constitutes income of the stockholder is not affected by antecedent transfers of the stock from hand to hand."

There is nothing in the Constitution which lends support to the theory that gain actually resulting from the increased value of capital can be treated as taxable income in the hands of the recipient only so far as the increase occurred while he owned the property. And *Irwin* v. *Gavit,* 268 U. S. 161, 167, is to the contrary.

The judgments below are

*Affirmed.*

The CHIEF JUSTICE took no part in the consideration or decision of these causes.