## PERTHUR HOLDING CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 23.

Circuit Court of Appeals, Second Circuit.

Nov. 7, 1932.

Brison Howie, of New York City, for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Francis H. Horan, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and J. Arthur Adams, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The taxpayer was a corporation with an authorized capital of $260,000, none of which had been issued. In December, 1925, it issued $250,000 of its shares to one, Kuttroff, in exchange for land in New York which at the time was worth that amount, and which it sold in 1926 at a small loss. This is deducted in its return for that year, but the Commissioner struck out the deduction, and in its place assessed as a deficiency, a tax levied upon the difference between the proceeds of the sale in 1926 and the value of the land on March 1, 1913, Kuttroff having bought before that date. The case concededly falls within section 203 (b) (4) and section 204 (a) (8) of the Revenue Act of 1926, 26 USCA §§ 934 (b) (4), 935 (a) (8), so that the only question raised is of the constitutionality of those two sections. The Court of Claims (Newman, Saunders & Co. v. U. S., 36 F.(2d) 1009), and the Ninth Circuit (Osburn California Corp. v. Welch, 39 F.(2d) 41), have decided the point in favor of the Treasury under the Revenue Act of 1924 (43 Stat. 253), and this effort to secure an opposite ruling is no doubt in the hope of carrying the question to the Supreme Court.

The taxpayer's theory is that Kuttroff's conveyance so changed his relation to the land that he realized a taxable income at once, measured by the difference between the value of the shares and that of the land on March 1, 1913. This income could be taxed against him, but not against the company, for that would be to tax one person upon the income of another (Hoeper v. Wisconsin, 284 U. S. 206, 52 S. Ct. 120, 76 L. Ed. 248). Furthermore, Kuttroff will be personally liable to a tax upon the same amount,

if he sells his shares at an advance corresponding to the company's profit, in which event the "basis" for his calculation· must be the value of the land on March 1, 1913. Section 204 (a) (6), Revenue Act of 1926, 26 USCA § 935 (a) (6).

■ Two questions arise: (1) Whether there was an income to tax at all; (2) whether the company may be taxed upon it. The answer to the first is easy. When Kuttroff exchanged the land for shares, the increase could have been taxed as his income; until 1921 it was (section 202 (b), Revenue Act of 1918, 40 Stat. 1060), for it·was only in that year that the law first refused to "recognize" such transactions as creating income (section 202 (c) (3), Revenue Act of 1921, 42 Stat. 229). When section 204 (a) (8) of the Revenue Act of 1926, taxed the ·increase up to the exchange along with any which arose afterwards, there was therefore no defect in subject-matter under the Sixteenth Amendment. Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R.. 1570, throws no doubt upon that. Marr v. U. S., 268 U. S. 536, 45 S. Ct. 575, 69 L. Ed. 1079; Insurance, etc., Co., v. Commissioner, 36 F.(2d) 842 (C. C. A. 2). In Taft v. Bowers, 278 U. S. 470, 49 S. Ct. 199, 73 L. Ed. 460, 64 A. L. R. 362, this was not so clear. The increase in value in the donor's hands was not income at all, and became such only when the donee sold. But the court held that it was indubitably income after it was realized, and that was enough so far as concerned the subject-matter.

■ The answer to the second question is not so obvious. The exchange took place after the Revenue Act of 1924 had thrown upon the company the tax on Kuttroff's income; it was a consequence with notice of which the company was charged and which it ·could escape. The only possible objection is under the Fifth Amendment, on the notion that the tax takes property without due process of law; and it has indeed been sustained when the result was to affect trans-actions which took place before the tax was imposed (Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081; Blodgett v. Holden, 275 U. S. 142, 48 S. Ct. 105, 72 L. Ed. 206). But, so far as we know, it never has been, when the tax impinges prospectively, for the root of the evil is the inability of the parties to count upon the burdens they assume. It was because of this that in Taft v. Bowers, supra, 278 U. S. 470, 49 S. Ct. 199, 73 L. Ed. 460, 64 A. L. R. 362, the donee could be taxed upon what had indubitably never been her income, whether or not it was the donor's. Hoeper v. Wisconsin, supra, 284 U. S. 206, 52 S. Ct. 120, 76 L. Ed. 248, is only a verbal parallel. The court thought that the wife's income was no more the husband's than was his sister's; he had no escape from paying her taxes except divorce, ordinarily too drastic an alternative. The decision might have been pertinent if the law had touched only spouses, married thereafter.

■ Finally as to the argument that Kuttroff too, may be taxed upon the whole in-. come, either when he sells his shares, or when they are liquidated; and that there will be double taxation. That result is indeed uncertain; he may not sell, and the company may lose the gain before the shares are liquidated, if he does not. But we do not stand on that; we assume that he too will pay a tax upon the same amount. That may be unfair, but it is not unconstitutional; again, it was a matter for Kuttroff to consider when he put on a corporate dress. When the purpose is plain, the statute will stand; courts will not interfere because taxes are duplicated. Cream of Wheat Co. v. Grand Forks County, N. D., 253 U. S. 325, 329, 330, 40 S. Ct. 558, 64 L. Ed. 931; Hellmich v. Hellman, 276 U. S. 233, 237, 238, 48 S. Ct. 244, 72 L. Ed. 544, 56 A. L. R. 379. No doubt there are limits to what Congress may do under the guise of taxation (The Child Labor Tax Case, 259 U. S. 20, 42 S. Ct. 449, 66 L. Ed. 817, 21 A. L. R. 1432); it is otherwise difficult to see how the Tenth Amendment could endure. But in general it is free to depress one kind of activity and promote another, for the incidence of taxation inevitably has indirect social and economic effects, and with them courts do not and must not, concern themselves. If these sections unduly discourage incorporation of such enterprises, Congress may have intended it, and was within its powers if it did. It is hard to conceive greater chaos than if judges were to upset fiscal policies of which they disapprove.

Order affirmed.