## SECURITY TRUST CO. et al. v. COMMIS-SIONER OF INTERNAL REVENUE.

## DETROIT TRUST CO. et al. v. SAME.

### Nos. 6266, 6267.

Circuit Court of Appeals, Sixth Circuit.

June 29, 1933.

Archibald Broomfield and Hal H. Smith, both of Detroit, Mich. (Beaumont, Smith & Harris, of Detroit, Mich., on the brief), for petitioners.

Hayner N. Larson, of Washington, D. C. (Sewall Key, C. M. Charest, and W. H. Trigg, all of Washington, D. C., on the brief), for respondent.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The taxpayers in each case are testamentary trustees. The question to be decided is whether the basis for determining gains derived by them on the sale of personal property received in trust as residuary legatees is the market value of the property at the time of its transfer to them by representatives of the estate under a probate court order of distribution, or the market value at the time of the testator's death.

There is no dispute as to the facts, which are mainly stipulated. Horace E. and John F. Dodge, brothers, and founders of Dodge Bros., motor manufacturers, died testate in 1920, the former on December 10th and the latter on January 14th. Their wills were admitted to probate in Michigan, February 10, 1921, and June 29, 1921, respectively. Executors of the former's estate were appointed February 11, 1921, and administrators with the will annexed were appointed for the latter's estate January 5, 1922. At the death of the testators each owned 50,000 shares of capital stock of Dodge Bros., a Michigan corporation, which, through a stock dividend in 1922, were increased to 250,000. The stock came into the possession and control of the decedents' respective executors and administrators, and was voted by them at meetings of the corporation. In the Horace E. Dodge estate trustees were appointed on June 14, 1924, and on the same day the probate court made an order of distribution to the trustees. The trustees under the will of John F. Dodge were appointed on January 8, 1924, and a decree of distribution in that estate was made by the probate court on January 24, 1924. In each case the stock here in controversy was transferred and delivered to the trustees following their appointment and qualification.

On May 1, 1925, Dodge Bros., whose name was at that time changed to the Dodge Estates Corporation, sold all of its assets, subject to certain liabilities, for $146,000,000 cash. On May 4, 1925, it filed a notice of dissolution, and on that date paid a cash liquidating dividend of $125,000,000, of which the Horace Dodge trustees received $62,500,-000, and the John Dodge trustees $45,139,000. This dividend was the first of a series of distributions, in complete cancellation or redemption of the company's stock. In their respective income tax returns for 1925 the trustees of each trust disclosed the receipt of the liquidating dividend, but contended that none of it was subject to tax on the ground that the amount received from the corporation was not in excess of the fair market value of the shares when delivered to them by the representatives of the estates.

Between the date of death of each decedent and the receipt of the liquidating dividend by his trustees, the fair market value of the Dodge stock had very greatly increased. The respondent being of the opinion that the difference between the value of the stock at the time of death and the amount received by the trustees represented taxable income, asserted deficiencies. Upon appeal to the Board of Tax Appeals, which approved the respondent's action, petitioners conceded that the stock was worth less when delivered to them than the amount received, but contended that their tax liability was measured only by the increase in the fair market value of the stock between the date of its transfer to them under the order of distribution and the date of the receipt of the liquidating dividend. The deficiency assessment has in each case been paid, so that the controversy is now as to whether the petitioners are entitled to recover as an overpayment that portion of the deficiency not conceded to have been lawfully asserted. By stipulation and concession all other subjects of controversy have been eliminated from the case. There is no dispute as to the fair market value of the stock at each of the several critical dates, as to the amount of deficiency on the basis relied upon by the respondent, nor as to the amount of the refund if the petitioners are correct.

 The taxes assessed to and paid by the petitioners are governed by the Revenue Act of 1926. Under that act, as under previous Revenue Acts, gross income includes gains derived from sales of property, but does not include the value of property acquired by bequest, devise, or descent, although the gain derived from such property is taxable. Section 204 (a) of the act (26 USCA § 935 (a) indicates the basis upon which gain is to be determined: "If the property was acquired by bequest, devise, or inheritance, the basis shall be the fair market value of such property at the time of such acquisition."

This section was construed in Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 116, 74 L. Ed. 457, in a case where stock was distributed to a residuary legatee pursuant to a decree of distribution by the probate court. The taxpayer subsequently sold the stock, and the question arose whether the basis for determining taxable gain was the value of the stock at the time of its delivery to the taxpayer by the executor, or at the time of the testator's death. The court held the latter date controlling, saying: "Upon the death of the owner, title to his real estate passes to his heirs or devisees. A different rule applies to personal property. Title to it does not vest at once in heirs or legatees. United States v. Jones, 236 U. S. 106, 112, 35 S. Ct. 261, 59 L. Ed. 488, Ann. Cas. 1916A, 316. But immediately on the death of the owner there vests in each of them the right to his distributive share of so much as shall remain after proper administration and the right to have it delivered upon entry of the decree of distribution. (Citing cases.) Upon acceptance of the trust there vests in the administrators or executors, as of the date of the death, title to all personal property belonging to the estate; it is taken, not for themselves, but in the right of others for the proper administration of the estate and for distribution of the residue. The decree of distribution confers no new right; it merely identifies the property remaining, evidences right of possession in the heirs or legatees, and requires the administrators or executors to deliver it to them. The legal title so given relates back to the date of the death."

It is contended by the petitioners that Brewster v. Gage is not controlling of the issues here involved, because the residuary legatees are not individuals, as in that case, but testamentary trustees, and since under Michigan law testamentary trustees are without authority to act until appointed by an order of the probate court, there can be no acquisition by them in the sense of the statute prior to appointment and qualification. Chapin v. Chapin, 229 Mich. 515, 201 N. W. 530; Chappus v. Lucke, 246 Mich. 272, 224 N. W. 432.

Granting that in Michigan testamentary trustees have no powers to deal with the trust estate until appointment and qualification, this is not necessarily determinative of the case. The same is true generally of executors and administrators, yet the Supreme Court in Brewster v. Gage held that "upon acceptance of the trust there vests in the administrators or executors, as of the date of the death, title to all personal property belonging to the estate," and "the legal title so given relates back to the date of the death." The petitioners argue, notwithstanding, that this holding may have been necessary to bridge the gap between the date of death and the date of appointment of executors and administrators, but that in the case of testamentary trustees there is no gap to bridge, for title passes directly and immediately from the representatives of the estate to the testamentary trustees, and, further, that the doc-

trine of "relation back" is but a fiction that will be resorted to to avoid injustice, but never to increase tax liability.

We do not find these contentions persuasive. The trusts here involved were created by will—they were in no sense the creation of the probate court. Granted that trust powers could not have been exercised, nor the trust property controlled, sold, mortgaged, or converted until trustees came into existence as such, the trusts still had their genesis in the will, and the will speaks as of the date of death. It was the express purpose of the Congress to exempt from tax property acquired by bequest, devise or inheritance. It was equally its clear purpose that gains derived from such property should be taxed when realized. It is true that the basis for determination of gain is by section 204 (a) 5 (26 USCA § 935 (a) (5), the time of acquisition, but the basis is applicable to property acquired "by bequest, devise or inheritance," and no other test of acquisition is provided.[1] Moreover, the Revenue Act of 1926, as did previous acts, defines the word "taxpayer" as including a trust or an estate. " * * * We do not forget that the trust is an abstraction, and that the economic pinch [or caress] is felt by men of flesh and blood. Even so, the law has seen fit to deal with this abstraction for income tax purposes as a separate existence. * * * " Anderson v. Wilson (U. S.) 53 S. Ct. 417, 420, 77 L. Ed. ——, decided March 13, 1933.

Nor was the doctrine of "relation back" resorted to in the Brewster Case, or by the Board here for the purpose of increasing tax liability. In both cases it operated to prevent the avoidance of tax. The totality of gain in market value of the Dodge stock between the date of death of the two brothers and the sale of the Dodge assets was in a very true sense realized by the testamentary trustees.[2] Had the sale been consummated prior to the order of distribution there could have been no question about the measure of tax liability. Had the stock been immediately transferred to the trustees, as in fact it later was, with a reservation of cash or other securities for payment and discharge of liabilities, there would also have been no question of liability. We do not imply that there was here any purposeful delay or acceleration of the date of distribution, but we agree with the Court of Appeals of the Second Circuit [Brewster v. Gage, 30 F.(2d) 604], that it was surely not the intent of Congress that the acquisition of a mere legal title should completely wipe out or render untaxable gains realized upon sale, that such an unfortunate construction would place it within the power of personal representatives and legatees to defer distribution in order to escape tax, is not called for by the statute and should be avoided.

Aside from these considerations, we deem the decision of the Supreme Court in Brewster v. Gage wholly decisive of the present controversy. It was there said that Congress unquestionably had power, and reasonably might fix value at the time title passed from the decedent as the basis for determining gain or loss upon the sale of the right or of the property before or after the decree of distribution, and that it is not inconsistent with the rules of law governing descent and distribution of real and personal property of decedents to construe the words in question to mean the date of death. The fact that the court there recognized that an equitable right vested in the individual legatee immediately upon the testator's death is not the sole basis for its decision. That circumstance may lend added strength to an argument which without it is still sufficiently complete and convincing.

If anything further were needed to clarify and make applicable to the issues here involved the opinion in the Brewster Case, it may be found in its final paragraph. Reference is made to the Revenue Act of 1928, § 113 (a) (5), 26 USCA § 2113 (a) (5), which expressly establishes value at the time of death as the basis of calculation in respect of sales of personal property acquired by specific bequest, and of real estate acquired by general or specific devise, or by intestacy, but which in all other cases fixes market value at the time of distribution as the basis. Of that act the court said: "The deliberate selection of language so differing from that used in the earlier acts indicates that a change of law was intended."

The decisions of the Board of Tax Appeals are affirmed.

---

[1] The act makes its own definition. Karnuth v. United States ex rel. Albro, for Cook, 279 U. S. 231, at page 242, 49 S. Ct. 274, 73 L. Ed. 677. Mere names and definitions, however important as aids to understanding, do not conclude the lawmaker. Tyler v. United States, 281 U. S. 497, at page 502, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758.

[2] Taxation, as it many times has been said, is eminently practical. Tyler v. United States, supra, page 503 of 281 U. S., 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758.