**DARCY et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 363.

Circuit Court of Appeals, Second Circuit.

Aug. 24, 1933.

582

Allen G. Gartner, of Washington, D. C. (Allen G. Gartner, of Washington, D. C., and Raymond M. White and James S. Darcy, both of New York City, of counsel), for appellants.

Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Allin H. Pierce, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The facts are not in dispute and were found by the Board of Tax Appeals as follows:

"Findings of Fact.

"The petitioners, residents of New York State, are the executors of the estate of James Temple Gwathmey who died June 11, 1924. The decedent, prior to his death, was a member of the partnership of George H. McFadden & Bro., commission cotton factors, having its principal office in Philadelphia, Pennsylvania, and an office in New York City. He was the resident partner in charge of the New York City office. The partnership agreement, in effect at the time of the decedent's death, contained the following material provisions:

"'Article III. * * * The interest of J. Temple Gwathmey shall be limited solely to participation in the profits of the New York Office of George H. McFadden & Bro., to the extent of fifty per cent. (50%) thereof. Said Gwathmey, as between the partners of George H. McFadden & Bro., shall be liable only for the losses of the New York Office of George H. McFadden & Bro., in the same proportion as he is entitled to share in said profits. Said Gwathmey shall have no interest or participation in the profits other than the above recited share of profits of the New York Office, nor in the assets, firm name or good will of the firm of George H. McFadden & Bro. The amount of profits and losses and the amount of business of the New York Office of George H. McFadden & Bro., shall be determined from time to time by the partners of George H. McFadden & Bro., other than said Gwathmey, and such determination shall be final and conclusive on the said Gwathmey.'

"'Article VIII. In case of the death of one of the partners during the currency of any business year, his interest shall be continued until the expiration of said year, being credited with profits less withdrawals, or charged with losses plus withdrawals. At the expiration of said year the estate

of said partner shall be credited with the amount which was to his credit at the last periodical ascertainment of values plus said profits less withdrawals, or minus said losses plus withdrawals.

" 'If the business of the partnership be continued by some or all of the remaining partners by a firm composed of some or all of the remaining partners, either alone or in connection with others, the new firm shall put to the credit of the estate of the dead partner the amount thus ascertained, together with any interest upon his capital accruing since the last ascertainment of his contribution. The estate shall be a creditor of the new partnership and shall be entitled to be paid one-fifth in cash at the end of the business year and the residue in four equal annual installments, with interest at the rate of eight per centum (8%) per annum, payable quarterly.
* * *

" 'It shall be optional with the new firm to anticipate the payment of the whole or any part of the principal due to the deceased partners upon the expiration of thirty (30) days' notice to the personal representative of such deceased partners.'

"The books of account of the New York office, prior to the year 1924 had been closed as of July 31, but in 1924 this branch changed its practice to conform to that of the Philadelphia office and, for the year 1924, said books were closed as of August 31. The Federal income tax returns of the partnership which included the operations of the New York office for the year 1924 and the prior year, were filed on the basis of a fiscal year ended August 31. The decedent used the calendar year in reporting his income on the basis of cash receipts and disbursements. The executors continued the same manner and method used by the decedent.

"The surviving partners continued the business until the end of the partnership's fiscal year, August 31, 1924, and determined the decedent's share of the partnership's profits in accordance with the partnership agreement to be $157,694.90 as of the closing date. The decedent had withdrawn $1,322.81 during the period January 1, 1924 to June 11, 1924, leaving a balance of $156,372.09. This latter amount was included in the total amount to which the estate became entitled under the partnership agreement as the result of an accounting and a distribution in liquidation of the partnership interests of the deceased. Said total amount was credited to the estate on the partnership books on March 9, 1925, and paid on the same date. An agreement was also entered into on the same date between the executors and the surviving partners whereby the former released the latter from further liability beyond the total amount to which the estate was entitled. The partnership books were not closed as of the date of the decedent's death nor at any time other than at the end of its fiscal year August 31, 1924.

"The decedent reported his share of the partnership profits of the New York office for its fiscal year ended July 31, 1923, in his return for the calendar year 1923.

"The executors filed a return for the decedent covering the period January 1, 1924 to June 11, 1924, showing his withdrawals of $1,322.81 as income from the partnership. The respondent, upon an audit of this return, determined that the amount of $157,694.90 representing the decedent's distributive share of the partnership income as of August 31, 1924, covered the 13 months' period from August 1, 1923 to August 31, 1924. He computed the 13 months' period as 407 days and the period from August 1, 1923 to June 11, 1924, as 328 days and determined 328/407 of $157,694.90 or $125,520.27 as the amount taxable on the return for the period January 1, 1924 to June 11, 1924. Inasmuch as $1,322.81 had been returned as income, he increased said amount by adding $124,197.56 and computed the tax partly at 1923 and partly at 1924 rates. Thereupon by a notice dated and mailed December 27, 1929, the respondent notified the petitioners of a deficiency in decedent's income tax for the period January 1, 1924 to June 11, 1924, amounting to $39,587.43.

"The return covering the period January 1, 1924 to June 11, 1924, was filed in the Collector's office in New York City on March 16, 1925. This return was signed 'James S. Darcy, Executor.' On January 26, 1929, a waiver covering this same period was filed in the office of the revenue agent in charge in New York City. This waiver reads as follows:

" 'January 25, 1929.
" 'In pursuance of the provisions of existing Internal Revenue Laws James Temple Gwathmey, deceased, a taxpayer of New York, New York, and the Commissioner of Internal Revenue hereby consent and agree as follows:

" 'That the amount of any income, excess-profits, or war-profits, taxes due under any return made by or on behalf of the above named taxpayer for the year January 1, 1924 to June 11, 1924, under existing acts, or under prior revenue acts, may be assessed at any time on or before December 31, 1929, except that, if a notice of a deficiency in tax is sent to said taxpayer by registered mail on or before said date then the time for making any assessment as aforesaid shall be extended beyond the said date by the number of days during which the Commissioner is prohibited from making an assessment and for sixty days thereafter.

" 'James Temple Gwathmey, Deceased, Taxpayer.

" '[Signed] By James S. Darcy, Executor of Estate of J. T. Gwathmey.

" 'D. H. Blair, Commissioner.

" '[Signed] By R. Miles, Revenue Agent in Charge.'

"The three other executors had knowledge of Darcy's execution of the waiver. James S. Darcy is an attorney who supervised the affairs of the estate relating to taxes.

"None of the executors have at any time since acting in that capacity, given formal notice to the respondent that they were acting in a fiduciary capacity for the decedent or his estate under section 281, Revenue Act 1926 (26 USCA § 1070), or section 312, Revenue Act 1928 (26 USCA § 2312). A certificate of the Clerk of the Surrogate Court dated July 6, 1927, was filed with the Bureau of Internal Revenue on January 28, 1929, certifying that letters testamentary had been issued to the executors who are the petitioners herein. This certificate was filed accompanying a power of attorney given by the executors to their accountant authorizing him to represent them when appearing before officials of the Bureau and was required to be filed under the Bureau's regulations. Another similar certificate was filed in March, 1929, accompanying a power of attorney in connection with another Federal tax case involving a deficiency separate and distinct from the deficiency involved herein.

"In a sworn protest dated January 23, 1929, filed in the Bureau of Internal Revenue, the petitioners herein stated that they were the executors of the estate here involved.

"The decedent's share of the partnership's profits for its fiscal year ended August 31, 1924, stated hereinbefore, $156,732.09, was included in the Federal estate tax return filed by the estate as a part of the decedent's gross estate and the proper amount of estate tax was paid thereon."

When Mr. Gwathmey died, the partnership of which he was a member ceased to exist. Pennsylvania Uniform Partnership Act, Act March 26, 1915, P. L. 18, part 6, § 31(4) (59 PS § 93(4); New York Partnership Law (Consol. Laws, c. 39), §§ 60, 62. His share in the partnership income up to the date of his death was by agreement to be computed by giving effect to events subsequent to his decease. That agreement, however, did not and could not keep the partnership in existence with a dead man as a partner. The effect of this agreement was but to provide a method for determining what portion of the net income of the partnership was the share of the deceased at the time he died. It is true that because the fiscal year of the partnership which existed on June 11, 1924, ended on August 31 in that year and that period was, under the partnership agreement, to be taken as the accounting period for the determination of the deceased partner's interest, his share may have been more or less than it would have been if computed as of the time he died without giving effect to business transactions thereafter; but this need touch no more than the division of partnership net income as of the time of his death and it has not been shown that it does. Whether the result of the agreed method gave as the share of the deceased more or less depends upon whether the subsequent business by itself showed a profit or a loss. No one can tell from the record before us. The decedent could himself have no income after he died and likewise could sustain no loss, but his distributive share of partnership net income as of the time he died could be determined in whatever way the partnership agreement provided, and, in the absence of proof to that effect, we cannot say that the old partnership did not have net income as of the date of the decedent's death at least equal to what the commissioner has found on computation to have been his distributive share. The partnership books were not closed as of that date, though the partnership then ceased to exist. The commissioner could but take the net income for the accounting period reflected by the books and prorate it. Commissioner v. James (C. C. A.) 49 F.(2d)

707, 708. The burden is upon the petitioners to show the correct amount of the tax in order to show that the commissioner's determination was wrong. Compare Burnet v. Houston, 283 U. S. 223, 228, 51 S. Ct. 413, 75 L. Ed. 991; Reinecke v. Spalding, 280 U. S. 227, 232, 233, 50 S. Ct. 96, 74 L. Ed. 385. In a situation like this, that requires proof that the amount of the deficiency is erroneous, for it is that fact, and not the method of computation, which controls. Hughes v. Commissioner (C. C. A.) 38 F. (2d) 755, 757. Obviously, the petitioners could not show that the amount of the deficiency was incorrect, providing there was no error in arithmetic, without proving either that the partnership had no net income out of which the deceased was entitled to his distributive share when he died or that its net income then was less than the deficiency found. It has shown neither.

In Davison v. Commissioner, 54 F.(2d) 1077, we affirmed a decision of the Board of Tax Appeals in a case which differed from this one only in that the partnership and the deceased partner both kept their books and filed returns on the calendar year basis. The death of a partner occurred within the accounting period of the partnership and his distributive interest at the time he died was computed by taking into consideration the results of business transactions after he died. It cannot be perceived that the difference in the manner of accounting mentioned shows a difference in principle between this case and the Davison Case. See, also, First Trust Co. of Omaha v. United States (Ct. Cl.) 1 Fed. Supp. 900.

Section 218 (a) of the Revenue Act of 1924 (26 USCA § 959(a) is the applicable statute. It provides so far as material that: " * * * There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year, or, if his net income for such taxable year is computed upon the basis of a period different from that upon the basis of which the net income of the partnership is computed, then his distributive share of the net income of the partnership for any accounting period of the partnership ending within the taxable year upon the basis of which the partner's net income is computed."

It is suggested that, as the deceased partner did not receive the partnership income made the subject of the deficiency

assessment, it was not income to him and so a statute which taxes it as his income is unconstitutional. We agree that what is not income in fact cannot be made income by legislative fiat and so brought within the income tax laws. Hoeper v. Tax Commission, 284 U. S. 206, 215, 52 S. Ct. 120, 76 L. Ed. 248. But this actually was the decedent's income. For all we know he could have had it as such before he died. He did draw a comparatively small amount between January 1, 1924, and the date of his death. No one can say from this record that he drew all he could. Nor is there any substance to the claim that because this income became a part of the decedent's estate and was taxed under the estate tax it could not also be taxed as income to the decedent. It was his income before it became a part of his estate, and the Constitution does not prohibit levying a tax, at least one that does not confiscate, both on the income of a person and upon the same property as a part or the whole of the corpus of his estate if the turn of events makes it such. See Perthur Holding Corporation v. Commissioner (C. C. A.) 61 F.(2d) 785.

As the petitioners no longer claim that the waiver was invalid, we have not considered that.

Affirmed.