## KING v. UNITED STATES.
### No. 5513.

District Court, D. Maryland.
March 9, 1935.

Morton P. Fisher (of Fisher & Fisher), of Baltimore, Md., and A. E. James (of Cooke & Beneman), of Washington, D. C., for plaintiff.

Bernard J. Flynn, U. S. Atty., and G. Randolph Aiken, Asst. U. S. Atty., both of Baltimore, Md., and P. R. Russell, Sp. Asst. to Atty. Gen., for the United States.

CHESNUT, District Judge.

The plaintiff sues the United States of America to recover $78,557.15 on account of principal and interest of alleged exces- sive income tax required to be paid to Galen L. Tait, formerly Collector of Internal Rev- enue for Baltimore, Maryland. The tax in dispute was assessed by the Commissioner of Internal Revenue against the Grama- phone and Securities Corporation, a Vir- ginia corporation, for a profit realized in the year 1927 by the sale of 8400 shares of the capital stock of the Victor Talking Ma- chine Company. This corporation was sub- sequently dissolved and its assets transfer- red to the plaintiff who was thus required to pay the tax and after doing so, petitioned for a refund which was refused. The stock which was sold had been received by the Gramaphone Company shortly after its or- ganization on or about July 8, 1921, from one Emile Berliner who caused the corpora- tion to be organized for the benefit of him- self, his wife and children. It is said that the inspiration for the formation of the cor- poration was to facilitate the distribution among his family of a substantial part of his property but to keep it united and un- der his control during his lifetime. The plaintiff is one of his daughters.

When organized it had an authorized capitalization of not less than 2,000 nor more than 4,000 shares of stock of no par value. On its organization Berliner trans- ferred to it 19,998 shares of The Grama- phone Company, Ltd., a British corporation engaged in the same general business as that of the well known Victor Talking Ma- chine Company, the American corporation. Berliner was an inventor who had had close contact with the development of the busi- ness of the American corporation. In ex- change for the stock of The Gramaphone Company, Ltd., he received from the Vir- ginia corporation, the taxpayer in this case, 1998 shares out of its 2,000 issued shares. Two additional shares were issued for cash and no more was subsequently issued by the corporation. Within about thirty days after the organization of the corporation and the issuance of its stock as stated, Ber- liner also transferred to the corporation without additional stock issuance or other consideration, 1200 shares of Victor Talk- ing Machine Company stock, which subse- quently and before its sale by the taxpayer, by virtue of stock dividends, became 8400 shares of stock. This stock had been ac- quired by Berliner prior to March 1, 1913 at a cost price of less than $720,000 which was its market value on March 1, 1913. When the stock was transferred to the tax-

payer in 1921 its fair market value was $1,200,000. It was sold by the taxpayer in 1927 for $1,302,000, less expense incurred of $11,911.40. In its income tax return for 1927 the corporation treated the sale as yielding a profit represented by the difference between the value of the stock at the time of its acquisition by the taxpayer ($1,200,000) and the net sale price; but the Commissioner of Internal Revenue on review determined that the taxable profit must be computed on the basis of the net sale price less the market value as of March 1, 1913 ($720,000). He thus added to the taxable profit $480,000 and determined thereon an additional tax deficiency of $64,-800.02.

The question in the case is thus seen to be whether the value of the stock as of March 1, 1913 or its value in 1921 when it was transferred to the corporation, is to be deducted from its net sale price in determining profit taxable as income. It is the contention of the Government that the basis of computation for the tax is the same that would have applied to Berliner personally if he had retained the stock instead of giving it to the corporation. And it is said that this is the necessary result of the applicable statutes which are sections 204 (a) (2) and (8) of the Revenue Act of 1926, c. 27, 44 Stat. 9, 26 USCA § 935 (a) (2) and (8). The statute reads as follows:

"Sec. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—* * *

"(2) If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift. If the facts necessary to determine such basis are unknown to the donee, the commissioner shall, if possible, obtain such facts from such donor or last preceding owner, or any other person cognizant thereof. If the commissioner finds it impossible to obtain such facts, the basis shall be the fair market value of such property as found by the commissioner as of the date or approximate date at which, according to the best information that the commissioner is able to obtain, such property was acquired by such donor or last preceding owner; * * *

"(8) If the property (other than stock or securities in a corporation a party to a reorganization) was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in paragraph (4) of subdivision (b) of section 203 [section 934] (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money in addition to such stock or securities), then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made."

The plaintiff's theory for the recovery of the tax as set out in her petition for refund which is copied in the special count of her declaration, to which the Government has demurred, is that the Commissioner in making the assessment did so on the basis of subsection (8) above quoted, which the plaintiff says does not justify the tax because "the said stock was paid into the Gramaphone and Securities Corporation *as a paid in surplus* at a cost to the said Company of the value at the time paid in in 1921 of $1,200,000 and that therefore the gain computed on the sale of the said stock by the said company in its return was correct." (Italics supplied.) In other words, the plaintiff's contention is that property transferred to a corporation without consideration must be regarded as *paid in surplus,* and the statutory provision for calculating the basis of profit on subsequent sale of such property is not the basis which would have applied to the donor or transferor to the corporation.

The theory of the defendant's demurrer seems to be that under the averments of the declaration it is not free to challenge the plaintiff's theory that the transaction was not taxable under subsection (8); but nevertheless there is nothing in the declaration to show that the transaction was not taxable under subsection (2); that is to say, the transfer of the Victor Talking Machine Company stock to the taxpayer was a *gift.*

In support of its contention the Government relies on a recent decision in the Third Circuit presenting a substantially parallel case which arose under the Revenue Act of 1924 which, so far as questions here involved are concerned, is the same as that of 1926. Commissioner of Internal Revenue v. Rosenbloom Finance Corporation, 66

F.(2d) 556 (C. C. A. 3), certiorari denied 290 U. S. 692, 54 S. Ct. 127, 78 L. Ed. 596. The Court there held the transaction a gift and reversed the finding of the Board of Tax Appeals to the effect that the transaction was not taxable because it constituted a paid in surplus by the transferor to the corporation (24 B. T. A. 763).

 The contention of plaintiff's counsel here is that the decision of the Board of Tax Appeals was clearly correct and that this court being in another circuit is not technically bound to follow the decision of the Third Circuit. It has, however, been customary in this district to conform rulings to that of a Circuit Court of Appeals though in another circuit, where it is the only decision directly in point, save in exceptional cases. Thus Judge Rose, while district judge in this district, said in Imbrovek v. Hamburg-American Steam Packet Co. (D. C.) 190 F. 229, 233: "It is true that the decisions of that court are not technically binding here. Nevertheless they should be followed, unless after full consideration they appear to be in conflict with principles clearly settled by the decisions of the Supreme Court or the Court of Appeals of this circuit." I see no occasion here for not following the decision in the Third Circuit. The opinion in the case is brief but the court evidently regarded the question as too clear to warrant extended discussion. The burden of the plaintiff's argument against the decision is that a careful examination of the historical development of the income tax laws will show that a transaction of this kind is not to be regarded as a gift within the meaning of subsection (2). It is said the section must, by construction, be limited in its application to gifts to individuals, because other sections of the income tax laws and particularly subsection (8) dealing more particularly with corporations, impliedly exclude corporations from the scope of subsection (2). It may be admitted that in the sense of corporate finance, it is quite unusual if not inapt to speak of transfers of property to ordinary business corporations as gifts, especially where the obvious purpose is to increase the intrinsic or market value of the stock of the corporation held practically exclusively by the donor. But it will be observed that the general language of subsection (2) does not in fact exclude gifts to business corporations whether inspired by the motives of enhanc-

ing stock values in the hands of the donor or otherwise. It is certainly legally possible to make a gift to an ordinary business corporation and the transaction disclosed in this case would seem to clearly come within the ordinary legal definition of gift, the essential nature of which is a completed transfer of property without consideration, irrespective of motive. Noel v. Parrott, 15 F.(2d) 669 (C. C. A. 4); Levey v. Helvering, Commissioner, 62 App. D. C. 354, 68 F.(2d) 401, 403; Fitch v. Helvering, Commissioner, 70 F.(2d) 583, 585 (C. C. A. 8). It is, of course, well established that taxing acts when in doubtful language are to be construed in favor of the taxpayer, Burnet v. Guggenheim, 288 U. S. 280, 286, 53 S. Ct. 369, 77 L. Ed. 748; but this does not justify the creating of a doubt where none naturally arises from the language used.

 Even if the argument could prevail in favor of the taxpayer, in my opinion its very nature would drive this item of income into taxability under subsection (8) which makes the tax basis of the transferor applicable to profit realized from the sale of property received by a corporation from a transferor upon the issuance of its stock or securities therefor (subject to an adjustment not now material). See Phillips v. Comm. Int. Rev., 63 F.(2d) 101 (C. C. A. 3). The plaintiff here says that may not be, because literally no stock was issued by the corporation when the property was transferred to it. Literally this is true but in the sense of corporate finance it is rather unreal as applied in this case. Here we have in substance a one man corporation where the issuance of additional stock would be of little or no financial substance. It made no material difference to the stockholder whether additional shares of stock were issued or not as the value of all the stock held by him would remain substantially the same irrespective of the mere number of shares. In the financial sense, therefore, the conveyance of additional property to the corporation resulted in an increased value of the stock which had originally been issued to its sole stockholder and it does not seem to do any great violence to the language of the statute to treat the transaction in substance as the issuance of securities for property transferred. And this is quite emphasized in the particular case when, in addition to the facts stated in the declaration, there are taken into considera-

tion the further information given by counsel for the plaintiff to the argument to the effect that the reason for the transfer of the Victor Talking Machine Company stock to the taxpayer corporation in this case, within about thirty days after its first organization, was due to accident rather than design and particularly to the fact that the certificate for the Victor Talking Machine Company stock was not immediately at hand when the somewhat informally organized and maintained Virginia corporation was formed. That is to say, it is fairly inferable (though the inference is not admitted by counsel for the plaintiff) from what was stated at the argument that it was within the original contemplation of Berliner to transfer not only the stock in the British corporation but also that in the American corporation to his new family corporation when organized, and the stock that was issued to him therefor by the Virginia corporation was really intended to be for the stock shortly subsequently as well as that contemporaneously transferred.

A review of the legislative history of these statutes would seem to leave no doubt that it was the very evident intention of Congress to impose the income tax on the whole of the profits arising after March 1, 1913 from the appreciated value of the property when sold, irrespective of the continuity of ownership when the latter was broken by transfers without consideration, and whether to individuals or corporations. Subsection (2) first appeared in the income tax statutes as section 202 (a) (2) of the Revenue Act of 1921, c. 136, 42 Stat. 227. At that time the reason for its inclusion was stated in the Report of the Committee on Ways and Means as follows: "Section 203: * * * An essential change, however, is made in the treatment of property acquired by gift. No explicit rule is found in the present statute for determining the gain derived or the loss sustained on the sale of property acquired by gift; but the Bureau of Internal Revenue holds that under existing law the proper basis is the fair market price or value of such property at the time of its acquisition. This rule has been the source of serious evasion and abuse. Taxpayers having property which has come to be worth far more than it cost give such property to wives or relatives by whom it may be sold without realizing a gain unless the selling price is in excess of the value of the property at the time of the gift. The proposed bill in paragraph (2) of subdivision (a) provides a new and just rule, namely, that in the case of property acquired by gift after December 31, 1920, the basis for computing gain or loss shall be the same as the property would have in the hands of the donor or the last preceding owner by whom it was not acquired by gift. If the facts necessary to determine the cost or other basis are unknown to the donee, the Commissioner is empowered to obtain the necessary facts from the donor or any other person." The constitutionality of this new section was upheld by the Supreme Court in Taft v. Bowers, 278 U. S. 470, 49 S. Ct. 199, 73 L. Ed. 460, 64 A. L. R. 362, and Cooper v. United States, 280 U. S. 409, 50 S. Ct. 164, 74 L. Ed. 516. It is said that it continued to be the administrative practice to apply this basis of computation of profit in the case of voluntary transfers without consideration to both individuals and corporations without successful question until the Board of Tax Appeals decided adversely to the Government in the Rosenbloom Finance Corporation Case. Pending the appeal to the Circuit Court of Appeals for the Third Circuit, Congress passed the Revenue Act of 1932, c. 209, 47 Stat. 169, and included therein section 113 (a) (8), 26 USCA § 3113 (a) (8) (A, B), which reads as follows:

"Property acquired by issuance of stock or as paid-in surplus. If the property was acquired after December 31, 1920, by a corporation—

"(A) by the issuance of its stock or securities in connection with a transaction described in section 112 (b) (5) [section 3112 (b) (5)] (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), or

"(B) as paid-in surplus or as a contribution to capital, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made."

In explanation of (B) the Senate Report on the Bill (S. Rep. No. 665, 72d. Cong. 1st sess. p. 27) stated:

"This subsection was changed in the House bill in order to reflect the long established position of the Treasury Department

relative to the basis of property transferred to a corporation as paid-in surplus. The Treasury has consistently regarded the basis of such property to the corporation as being the same as the basis of the property to the transferor. However, the recent decision of the Board of Tax Appeals in Rosenbloom v. Commissioner, 24 B. T. A. 763, has opened an unexpected avenue of avoidance which, if ultimately sustained, might result in considerable loss of revenue. This decision holds that the basis of property transferred to a corporation as paid-in surplus is the fair market value of such property at the date of transfer. Regardless of the ultimate outcome of the Rosenbloom Case, it appears advisable to amend subsection 113 (a) (8) by the addition of a paragraph providing for carrying over the transferor's basis in such a case, in order to insure the continuation of this long established rule.

"Your committee has added to section 113 (a) (8) (B) a provision that the basis of property transferred to a corporation as a contribution to capital shall be the same as the basis in the hands of the transferor."

It is apparent that the reason for the enactment was to make certain the validity of the administrative practice at least for the future, in the event of an adverse decision in the Rosenbloom Case.

My conclusion, therefore, is that the special count of the plaintiff's declaration to which the defendant has demurred does not show that the particular transaction was not taxable on the basis of being treated as a gift; but if the contrary view could be successfully maintained then the facts stated in the declaration as supplemented by other facts stated by plaintiff's counsel at the argument would make the basis of computation for the determination of the tax as applied by the Commissioner a proper one; and therefore for either reason the declaration does not state a valid ground for recovery of the tax. Consequently the demurrer to this count of the declaration must be sustained.

The only other count in the declaration is the common money count which, it is understood, was intended to present no other or different cause of action than that more particularly stated in the second count which was demurred to. On this assumption presumably the plaintiff will desire to amend the declaration by striking out the money count so that the decision on the demurrer can be made the basis of an appeal if desired. I also suggested at the argument that for greater clarity on appeal if taken, it would seem desirable for the parties to stipulate the facts to the extent that they do not explicitly appear in the declaration as drawn.