**WILLIAMSON v. COMMISSIONER OF INTERNAL REVENUE.**

**COMMISSIONER OF INTERNAL REVE-NUE v. WILLIAMSON.**

Nos. 7578, 7615.

Circuit Court of Appeals, Sixth Circuit.

Dec. 15, 1938.

**736**

Murray Seasongood, of Cincinnati, Ohio (Murray Seasongood, Harry Stickney, and Paxton & Seasongood, all of Cincinnati, Ohio, on the brief), for petitioner Williamson.

Berryman Green, of Washington, D. C. (James W. Morris, Sewall Key, J. Louis Monarch, and Louise Foster, all of Washington, D. C., on the brief), for the Commissioner.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges. ·

ALLEN, Circuit Judge. ·

These appeals involve the same facts, and were consolidated for hearing and decision. In No. 7578 the taxpayer seeks to review the order of the Board of Tax Appeals sustaining a determination of deficiencies and adjusting the amounts thereof to $11,639.90 and $4,425.02 for the taxable years 1932 and 1933 respectively. 34 B.T.A. 668. In No. 7615 the Commissioner attacks the same order upon the ground that the deficiencies determined should have been $12,323.69 and $4,596.90 respectively.

The controversy arises out of the sale of certain stocks inherited by the taxpayer from her husband, A. W. Williamson, who died intestate on March 28, 1931, leaving her his sole heir at law. The facts are stipulated. At the time of decedent's death he owned 3,094 shares of common stock of the American Rolling Mill Company, and 5,932½ shares of common stock of the Columbia Gas & Electric Corporation. On that date these stocks had a fair market value of $29.50 and $41 per share respectively. Two administrators, one of them being the Fifth-Third Union Trust Company of Cincinnati, were appointed and qualified. The market value of the stocks decreased rapidly, and prior to October 31, 1931, the taxpayer demanded that the administrators sell sufficient assets to pay the expenses of administration and taxes, which amounted to approximately $90,000. The administrators did not comply with this demand. If these stocks had been sold within three months of the date of the administrators' qualification, as authorized under § 10697 of the General Code of Ohio, the prices obtained for the American Rolling Mill Company stock would have varied from $32.37½ per share to $15.12½ per share, and for the Columbia· Gas & Electric Corporation stock from $39.37½ to $20.62½ per share. In June, 1932, when the market value of these particular stocks was much lower, the administrators notified the taxpayer that they would sell

sufficient assets to pay the debts and taxes. On June 18, 1932, the administrators contracted with the taxpayer that the Fifth-Third Union Trust Company would lend the taxpayer sufficient funds to pay the debts, taxes and all charges outstanding against the estate, and the taxpayer agreed to execute and deliver notes in the amount of the loan, payable to the order of the Trust Company, to pledge as security therefor all the stocks of the estate, and to relinquish her right of action against the administrators for the shrinkage in the estate. The contract was fully performed.

On June 28, 1932, the probate court of Hamilton County, Ohio, entered an order directing that the property of the estate be distributed in kind to the person entitled thereto according to law. The stocks were actually transferred to the taxpayer on July 11 and July 14, 1932. At that time the common stock of the American Rolling Mill Company and of the Columbia Gas & Electric Company had a fair market value of $4.37½ and $6.62½ per share respectively. The taxpayer, during the taxable years 1932 and 1933, made sales of part of this stock at a price greater than the above fair market values existing on the date when she received the stock. The sales were made pursuant to the contract with the administrators.

In her income tax return, the taxpayer reported losses on these sales, calculating that the difference between the amount she received and the fair market value of the shares at the time of decedent's death constituted loss to her under the statute. The Commissioner computed gain based upon the difference between the amounts realized and the fair market value of the shares on the date of the order of distribution, June 28, 1932. The Board of Tax Appeals computed the gain, using July 11 and July 14, 1932, as the basic dates.

The deficiencies were determined under § 113 (a) (5) of the Revenue Act of 1932, c. 209, 47 Stat. 169, 198, 26 U.S.C. A. § 113 note, which reads as follows:

"(a) The basis of property shall be the cost of such property: except that— * * *

"(5) If personal property was acquired by specific bequest, or if real property was acquired by general or specific devise or by intestacy, the basis shall be the fair market value of the property at the time of the death of the decedent. If the property was acquired by the decedent's estate from the

decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer. * * *"

The principal questions are (1) Does § 113 (a) (5) apply in this case, and if applicable, should the taxpayer use as cost basis the fair market value of the stock at time of distribution to her, or the fair market value at the date of her husband's death?

(2) Does the provision in the statute that the cost basis of the stock shall be the fair market value at the time of distribution to the taxpayer violate the Constitution of the United States?

Upon the first question, it is the taxpayer's contention that the stocks sold were obtained for value and not by intestacy, and that hence § 113 (a) (5) does not apply. She alleges that in assuming liability for the debts of the estate, agreeing to pledge the stocks of the estate, and releasing her cause of action against the administrators, she gave valuable consideration for the stocks. Conceding the hardship arising from the fact that the administrators failed to sell these stocks at a time when a better price could have been realized, and later notified the taxpayer that the stocks would be sold at a time when they were greatly depressed in market value, this does not change the legal situation. In order to sustain her proposition that § 113 (a) (5) does not control, the taxpayer contends that the stocks were in effect sold to her by the administrators. But while value was given for the loan, this transaction had none of the earmarks of a sale. The taxpayer's receipt of the stocks was in no way dependent upon her loan or pledge. The Board of Tax Appeals found that the stocks were acquired by intestacy, and there is no evidence to support any other conclusion.

In the alternative, the taxpayer alleges that if § 113 (a) (5) controls, the stocks in question were acquired by the decedent's estate from the decedent, and that within the purview of the second sentence of the section, the basis thereof is the fair market value at the time of decedent's death. But this contention has no merit. The taxpayer acquired these stocks through a distribution in kind. The estate

did not acquire them. Cf. Commissioner v. Matheson, 5 Cir., 82 F.2d 380, 381. Hence the property was at no time "acquired by the decedent's estate from the decedent," and the third sentence of the section controls. The basis is the value of the property at the time of distribution to the taxpayer.

■■■ The decision must also be affirmed upon the question of constitutionality. Since Congress has the plenary power of taxation, it may determine the basic date for figuring gain or loss. Whether it be the date of purchase of stocks by a donor (Taft v. Bowers, 278 U.S. 470, 49 S.Ct. 199, 73 L.Ed. 460, 64 A.L.R. 362), or the time of acquisition (Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457),[1] or the time of actual distribution to the taxpayer, as in the present statute (Haskell v. Commissioner, 3 Cir., 78 F.2d 869), does not affect the validity of the measure. The classifications established in § 113 (a) (5) are reasonable and non-discriminatory, and the statute is clearly constitutional.

■■■ The Board of Tax Appeals decided that the taxpayer was entitled to have her gain taxed as capital net gain under § 101 (c) (8) of the Revenue Act of 1932, 26 U.S.C.A. § 101 note, finding that the stock had been held by her more than two years. McFeely v. Commissioner, 296 U.S. 102, 56 S.Ct. 54, 80 L.Ed. 83, 101 A.L.R. 304. The taxpayer urges that this decision, if affirmed, requires reversal of the main case, for if she held the stock more than two years, she acquired title long prior to the time of distribution. But the Supreme Court has disposed of this contention in McFeely v. Commissioner, stating that § 101 (c) (8) and § 113 (a) (5) "are not inconsistent, and that each should be read as affecting the subject to which alone it applies." [Page 59.]

■■■ The taxpayer's basic contention is that she suffered a loss in the sale of these stocks. Undoubtedly the securities were sold at less than their market value at the time of her husband's death. But the fundamental fallacy of the taxpayer's position is that while at her husband's death she had a right to receive these stocks, she had invested nothing in them, and they did not become her property until the actual distribution. Goodrich v. Edwards,

255 U.S. 527, 41 S.Ct. 390, 65 L.Ed. 758, in which the taxpayer acquired stock by purchase, is therefore not in point. In the instant case, between the date of distribution and the dates of sale there was a substantial increase in value, and the taxpayer gained by the sales, although she did not receive as much as she would have if the stocks had sold at the market price of March 28, 1931. Since it is not the value of the property acquired by her which is taxed, but the gain received in the sale, § 22 (b) of the Revenue Act of 1932, 26 U.S.C.A. § 22 (b) has no bearing.

■■■ In No. 7615 the Commissioner contends that the Board of Tax Appeals erred in its decision that distribution under § 113 (a) (5) occurs upon the date of actual transfer of the securities to the taxpayer, rather than upon the date when the order of distribution is entered by the probate court. We think that the Board of Tax Appeals was correct in its decision upon this point. Its determination (34 B.T.A. 924) that the date of the actual receipt of the stocks is the basis instead of the date of the order of distribution is in accord with the words of § 113 (a) (5), which expressly states that the basis shall be the fair market value of the property "at the time of the distribution to the taxpayer." The court order is the authority which underlies and precedes the distribution, and the time of actual distribution is not necessarily the same as the time of the entering of the order. Since distribution is the apportionment by a court of the personal property or the proceeds of an intestate's estate among those entitled to it according to the state statutes of distribution, and since the federal statute in general terms fixes the time of distribution as the basic date, Congress evidently contemplated that the time of distribution should be that which is recognized by state law. Under Ohio law, the probate court does not through its order effect a distribution of property. The only valid order of distribution which the probate court is authorized to enter is general. The probate court has no power to designate the distributees. Swearingen v. Morris, 14 Ohio St. 424, 432; Cox, Adm'r, v. John, 32 Ohio St. 532; Armstrong v. Grandin, 39 Ohio St. 368. In First National Bank of Cadiz v.

---

[1] The same basic date as that established in the statute considered in Brewster v. Gage, supra, namely, the time of acquisition, controlled the decision in Security Trust Co. v. Commissioner, 6 Cir., 65 F.2d 877.

Beebe, 62 Ohio St. 41, 56 N.E. 485, the opinion stated [page 487]:

"But it is to be specially noted that the only power here given with respect to the distribution of estates is to order distribution. This does not mean that the probate court may find and direct the persons to whom distribution is to be made, and the amounts to each, but means simply that, as a result of the settlement of accounts of executors and administrators, and as a step necessary to a final distribution of the trust fund, a general order of distribution is to be made."

To the same effect is Henry v. Doyle, 82 Ohio St. 113, 91 N.E. 990, 137 Am.St. Rep. 769. The order of the probate court of Hamilton County, therefore, did not bring about a segregation of the shares of stock, and did not, within the meaning of the statute, result in a distribution.

The decision is affirmed.