JAMES W. ARROTT, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73870.   Promulgated March 18, 1936.

134

*William A. Wilson, Esq.*, for the petitioner.
*James C. Maddox, Esq.*, for the respondent.

OPINION.

MATTHEWS: The respondent determined a deficiency in petitioner's income tax for the calendar year 1931 of $5,917.48. Three assignments of error are set out in the petition but, one of these having been disposed of by stipulation of the parties, only the two following issues remain:

1. Whether respondent erred in applying the first in, first out rule in determining gain or loss on sale of certain stock by petitioner;

2. Whether respondent erred in taking the date of distribution as the date of petitioner's acquisition of a legacy for the purpose of valuation in determining gain or loss on a later sale.

The facts which were stipulated are as follows:

The petitioner is a resident of Pittsburgh, Pennsylvania.

In April 1929 petitioner held three lots of American Radiator & Standard Sanitary Corporation stock, as follows: (1) 77,856 shares upon which the basis for determining gain or loss on sale or other disposition is $3.05875 a share; (2) 109 shares upon which the basis is $34.99 a share; and (3) 109 shares upon which the basis is $33.02 a share, or a total of 78,074 shares.

On May 2, 1929, stock rights were issued to petitioner on his 78,074 shares, entitling him to acquire 7,807.4 shares of new stock at $25 per share. He exercised these rights, together with six additional rights acquired by purchase, and on May 29, 1929, 7,808 shares of American Radiator & Standard Sanitary Corporation stock were purchased for petitioner's account by the Union Trust Co. of Pittsburgh (hereafter referred to as the Trust Co.) and were held by it as collateral for a loan made by the Trust Co. to petitioner to finance the purchase. These shares are hereinafter referred to as the "fourth lot."

On June 19, 1929, petitioner gave away 21,799 shares from the "first lot" and sold 1,000 from the "fourth lot." The first three lots were thereafter mingled, part being pledged with the Monongahela National Bank, but the remaining 6,808 shares of the fourth lot, here in question, were kept intact as collateral at the Trust Co.

Petitioner on December 2, 1929, therefore, owned in all 63,083 shares of American Radiator & Standard Sanitary Corporation

stock, the certificates for which were in temporary form, distributed as follows:

| | Total | Lot 1 | Lot 2 | Lot 3 | Lot 4 |
|---|---|---|---|---|---|
| In petitioner's possession | 49,733 | 49,515 | 109 | 109 | |
| Pledged with Monongahela National Bank | 6,542 | 6,542 | | | |
| Held as collateral by the Union Trust Co. of Pittsburgh | 6,808 | | | | 6,808 |
| | 63,083 | 56,057 | 109 | 109 | 6,808 |

On that day the Monongahela National Bank exchanged the temporary certificates for 6,542 shares which were pledged with it for permanent certificates. On December 4, 1929, petitioner sent the temporary certificates for 49,733 shares which were in his possession to the Trust Co. and that company sent those certificates together with the temporary certificates for the 6,808 shares, held by it as collateral, to the transfer agent of the American Radiator & Standard Sanitary Corporation to be exchanged for permanent certificates. The Trust Co. received from the transfer agent permanent certificates which were in such denominations that the Trust Co. found it impossible to extract the 6,808 shares to be held in its collateral account. It therefore returned them to the transfer agent and received permanent certificates again, but in form as follows:

8 certificates for 5,000 shares each.
15 certificates for 1,000 shares each.
15 certificates for 100 shares each.
1 certificate for 33 shares.
1 certificate for 8 shares.

Of these certificates, the Trust Co. retained as collateral to petitioner's loan the six lowest numbered certificates for 1,000 shares each, the eight lowest numbered certificates for 100 shares each, and the certificate for 8 shares. These certificates were numbered as follows:

CB–1188 to 1193 for 1,000 shares each, C–43658 to 43665 for 100 shares each and CO–24870 for 8 shares. The certificates for the remaining 49,733 shares were sent to petitioner.

On December 14, 1931, petitioner wrote to the Trust Co., as follows:

Sell for my account and risk at $5.00 per share or better, 6,808 shares American Radiator common stock, Certificates Nos.
said stock held as collateral under my loan, crediting the proceeds thereof to the account of my son, Mr. James W. Arrott, with your institution.

In the meantime, I will authorize your Trust Department to hand you in substitution for the stock sold an equal number of shares of American Radiator common stock.

In a letter dated December 17, 1931, the Trust Co. advised petitioner that it had sold for his account from the collateral on his

loan 6,808 shares "represented by certificate numbers CB–1188 to 1193, inclusive, for 1,000 shares each, C–43658 to 43665, inclusive, for 100 shares each, and CO–24870 for 8 shares", and had received in payment $34,510.08, which had been credited to the checking account of petitioner's son. It also acknowledged receipt from its trust department of 6,800 shares of the same common stock and a due bill for 8 shares yet to be delivered.

On December 15, 1931, the Trust Co. held as collateral for the aforesaid loan of petitioner the following number of shares of American Radiator & Standard Sanitary Corporation stock:

6,808 shares common, received as above set forth.
3,000 shares common, received November 10, 1930.
13,000 shares common, received October 27, 1931.
971 shares preferred, received October 27, 1931.

The certificates delivered upon the sale of 6,808 shares of American Radiator & Standard Sanitary Corporation stock in December 1931 were the same which had originally been retained by the Trust Co. in the collateral account after the exchange of temporary for permanent certificates, as set forth above.

The 6,808 shares of American Radiator & Standard Sanitary Corporation stock sold by the Trust Co. for petitioner's account realized the sum of $35,293, less tax and commission of $782.92, or a net amount of $34,510.08.

None of the permanent certificates issued to petitioner by the American Radiator & Standard Sanitary Corporation were issued with respect to any particular temporary certificate surrendered by petitioner or his agent to that company.

The respondent determined that the 6,808 shares sold were not identifiable with those purchased at any particular date, and applying the first in, first out rule, computed a profit, as follows:

| | |
|---|---:|
| Sale price December 15, 1931 | $34,510.08 |
| Basis for determining gain or loss on "first lot" $3.05875 per share | 20,823.97 |
| Capital net gain | 13,686.11 |

Annie M. Arrott, wife of petitioner, died December 27, 1930, and her will of one sentence read, as follows:

To my beloved husband, James W. Arrott, Jr. I leave all that I possess at the time of my death.

Annie M. Arrott owned at the time of her death, *inter alia*, 5,348 shares of American Radiator & Standard Sanitary Corporation common stock having a fair market value on December 27, 1930, of $85,568; 100 shares of the same corporation's preferred stock having a fair market value on December 27, 1930, of $14,100; and a $100 Fourth Liberty Loan bond having a fair market value on this date of $103.56, or a total of $99,771.56.

The 5,348 shares of the American Radiator & Standard Sanitary Corporation common stock had a fair market value on October 26, 1931, of $48,132; the 100 shares of the American Radiator & Standard Sanitary Corporation preferred stock had a fair market value on October 26, 1931, of $11,700; the $100 Fourth Liberty Loan bond had a fair market value on October 26, 1931, of $101.19, or a total for all of $59,933.19.

These securities were distributed in kind to petitioner under decree of the Orphans' Court of Allegheny County, Pennsylvania, dated October 26, 1931, and after this date they were sold by petitioner in 1931 through a broker for $55,013.38, as follows:

| | |
|---|---|
| 5,348 shares common stock American Radiator & Standard Sanitary Corporation | $43,362.98 |
| 100 shares preferred stock American Radiator & Standard Sanitary Corporation | 11,550.50 |
| $100 Fourth Liberty Loan bond | 99.90 |
| | 55,013.38 |

The respondent allowed a loss of $4,919.81, computed as follows:

| | |
|---|---|
| Fair market value, as of October 26, 1931, of the securities specified above | $59,933.19 |
| Sale price | 55,013.38 |
| Loss | 4,919.81 |

The estate tax return of Annie M. Arrott filed by petitioner as her administrator c. t. a., reported funeral expenses, attorneys' fees, and debts of decedent in the amount of $8,918.48, which were paid by the administrator during the administration of the estate.

1. The first question involves the correctness of the respondent's action in applying the first in, first out rule of article 58, Regulations 74, in determining the loss on the sale by the petitioner on December 16, 1931, of 6,808 shares of common stock of the American Radiator & Standard Sanitary Corporation. This question is resolved by whether such stock was sufficiently identified as from a particular lot purchased so that the cost of the shares from that particular lot may be used as the basis for determining the petitioner's loss on the stock sold.

The facts are clear and undisputed. There is no question that the petitioner intended to sell a particular lot of shares, being the fourth lot of 6,808 shares which he had acquired in May 1929 upon the exercise of stock rights, which had been continuously held by the Trust Co. in the petitioner's collateral account to secure the loan made to the petitioner to enable him to purchase these shares.

In support of his action in applying the first in, first out rule it is pointed out by the respondent that 16,000 shares of the same stock, in addition to the 6,808 shares originally pledged as collateral by the petitioner, were held in the petitioner's collateral account when

the sale was made and it is argued that, regardless of the petitioner's intention, the certificates were inextricably confused and commingled so that identification of any particular lot can not be made under the circumstances of this case.

We do not agree with the respondent's position on this point. In *Commissioner* v. *Rankin*, 295 U. S. 123, it was held that certificates did not constitute the only possible means of identifying stock and that shares of stock held on margin and sold might be identified by "designation" at the time of sale of what lots should be sold and what held. In *Fuller* v. *Commissioner*, 81 Fed. (2d) 176, reversing this Board's decision reported at 31 B. T. A. 154, the court pointed out that the identity of lots of stock need not necessarily be lost when the old certificates are surrendered for the purpose of a stock split-up, and upheld the taxpayer's claimed identification of the shares sold as representing his most recent purchases prior to the split-up.

The facts of the instant case are quite similar to those of *Miller* v. *Commissioner*, 80 Fed. (2d) 219, reversing, 31 B. T. A. 192, which involved the question of identification of shares where instructions were given a broker to sell from designated purchases and delivery was made from shares held by the broker in a safekeeping account. An order for the sale of 100 shares was fulfilled by delivery from a block of stock which had been commingled with other shares so that no certificates were traceable to any particular purchase. The Circuit Court of Appeals for the Second Circuit decided in favor of the taxpayer and held that the first in, first out rule was applicable only where there was neither identification by a certificate nor by designation of the taxpayer. See also *Robert E. Ford*, 33 B. T. A. 1229, which is to the same effect.

We are of the opinion that the petitioner herein sufficiently identified by lot the shares which he directed the Trust Co. to sell. In December 1931, when the sale was made, the Trust Co. held as collateral for the petitioner's account three lots of common stock of the American Radiator & Standard Sanitary Corporation, as follows: the 6,808 shares which were received in May 1929 under the circumstances set out above; 3,000 shares received on November 10, 1930; and 13,000 shares received on October 27, 1931. The holding by the Trust Co. in the collateral account of the particular lot of 6,808 shares, originally represented by temporary certificates, was not broken by receipt of the permanent certificates for the same number of shares. It is not important that no particular permanent certificates were issued for any particular temporary certificates. When the petitioner instructed the Trust Co. to sell 6,808 shares of this stock and designated the lot to be sold as the stock held as collateral under his loan, the only lot of 6,808 shares in the petitioner's collateral account was the above described fourth lot, acquired by

the petitioner in May 1929 upon the exercise of stock rights. It may be noted also that when the Trust Co. informed the petitioner that it had sold 6,808 shares from the collateral on his loan, as directed, the certificate numbers of the stock sold were listed by the Trust Co. and they were the same certificates which the Trust Co. had placed in the collateral account in December 1929, when the permanent certificates were received from the transfer agent. At that time these 6,808 shares were the only shares in the petitioner's collateral account and it was not until some months later that there were added to this account 16,000 additional shares, in lots of 3,000 and 13,000 shares, respectively. Had the petitioner been indifferent as to which shares should be sold it would have been much simpler to sell stock belonging to him, which was held by the trust department, instead of selling stock held as collateral and advising the trust department to hand over an equal number of shares in substitution for the stock sold. But the petitioner desired to dispose of this particular lot of shares and identified them by designation rather than by certificate numbers; the Trust Co. followed his instructions and sold the shares designated.

For the reasons stated above and upon authority of the cases cited we hold that the petitioner's designation of the shares to be sold was sufficient under the circumstances to preserve their identity as shares from a particular lot and avoid the effect of the first in, first out rule. We hold for the petitioner, therefore, on the first issue.

2. The second question is the amount of deductible loss petitioner sustained on the sale of certain securities received as a bequest from his wife, which depends upon whether the basis to be used is their valuation at the time of his wife's death on December 27, 1930, or at the date of distribution on October 26, 1931. That is determined by whether the bequest under which petitioner acquired the securities, was general or specific. Section 113 (a) (5), Revenue Act of 1928, set out in the margin, controls.[1]

---

[1] SEC. 113. BASIS FOR DETERMINING GAIN OR LOSS.—

(a) *Property acquired after February 28, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\*     \*     \*     \*     \*     \*     \*

(5) PROPERTY TRANSMITTED AT DEATH.—If personal property was acquired by specific bequest, or if real property was acquired by general or specific devise or by intestacy, the basis shall be the fair market value of the property at the time of the death of the decedent. If the property was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer. In the case of property transferred in trust to pay the income for life to or upon the order or direction of the grantor, with the right reserved to the grantor at all times prior to his death to revoke the trust, the basis of such property in the hands of the persons entitled under the terms of the trust instrument to the property after the grantor's death shall, after such death, be the same as if the trust instrument had been a will executed on the day of the grantor's death.

The disputed bequest by petitioner's wife was as follows:

To my beloved husband, James W. Arrott, Jr., I leave all that I possess at the time of my death.

A specific legacy has been defined to be:

A specific legacy is a bequest of specified goods, distinguished from all other goods or property of the testator, which the legatee could point to and claim as his own. A mere bequest of "all my personal property", or a fractional part thereof, is not a specific legacy. The bequest of all the personal estate generally is not specific. A gift to a widow of one-third part of the personal estate of the testator in lieu of dower is not specific. *Appeal of Crone*, 103 Pa. 571, 576.

We conclude the present bequest was general and not specific. *Harry G. Haskell*, 30 B. T. A. 855, 860; affd., 78 Fed. (2d) 869; certiorari denied, 296 U. S. 652.

Accordingly, we sustain the action of respondent in using the value of the securities at the date of distribution as the basis for determining the petitioner's loss on the sale of those securities.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*