BESSIE C. WILLIAMSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 80545. Promulgated June 5, 1936.

*Harry Stickney, Esq.*, and *Murray Seasongood, Esq.*, for the petitioner.

*C. C. Holmes, Esq.*, and *C. C. Guy, Esq.*, for the respondent.

OPINION.

MELLOTT: Petitioner seeks a redetermination of the deficiency in income taxes determined by the respondent for the calendar years 1932 and 1933, in the amount of $20,080.22, of which $12,323.69 is for the calendar year 1932, and the balance, or $7,756.53, for the calendar year 1933. All of the facts have been stipulated. The deficiency results from respondent's determination that petitioner realized taxable gain when she sold certain shares of stock acquired from the estate of her husband. The principal question in dispute is the basis to be used in computing the gain or loss upon the sales.

Petitioner is a resident of Miami Beach, Florida. Her husband, Andrew Wilson Williamson, died intestate on March 28, 1931, being at the time of his death, a resident of Cincinnati, Ohio. He left no children or descendants, his parents had predeceased him, and petitioner was his sole heir at law. She waived her rights to administer the estate. The Fifty-Third Union Trust Co. and William L. McGrath were duly appointed administrators, and qualified by giving bond as such in the Probate Court of Hamilton County on April 17, 1931. They filed their final account and were discharged on June 28, 1932.

At the time of decedent's death, he was the owner of 3,094 shares of the common stock of the American Rolling Mill Co., which had a fair market value on that date of $29.50 per share, or a total value of $91,273, and 5,932½ shares of the common stock of the Columbia Gas & Electric Corporation which had a fair market value on that date of $41 per share or a total value of $243,232.50. The stocks were included in the Federal estate tax return at these valuations, and such valuations were accepted by the respondent in computing the amount of Federal estate taxes payable by the estate.

The gross estate, consisting chiefly of stock, bonds and real estate, was valued as of March 28, 1931, at $1,048,256.30. Deductions, exclusive of the specific exemption of $100,000, were determined by the Commissioner to amount to $108,435.02. They consisted of the debts of the decedent, expenses of administration, including the fees of the administrators and their attorneys, and the widow's allowance of $30,000. The net estate subject to the Federal estate tax was determined by the Commissioner to be $839,821.28, and the administrators paid the tax on this basis.

The law of Ohio in effect at the time of the death of the decedent and applicable to estates of decedents dying prior to January 1, 1932, provided that an administrator should, within three months after the date of his bond, sell the whole of the personal property of the estate which was liable for the payment of debts, except stocks

and bonds and collectible claims, the sale of which was not necessary for this purpose, and except property selected by the surviving spouse at its appraised value. (General Code of Ohio, sec. 10697.) Petitioner did not make such a selection.

The law of Ohio also provided that if the administrator did not, within six months after his appointment, have notice of demands against the estate which would authorize him to represent it as insolvent, he might proceed to pay the debts due from the estate, without becoming personally liable to any creditor in consequence of such payments made before notice of his demand, even though the remaining estate be insufficient to satisfy such payment. (General Code of Ohio, sec. 10741.)

Petitioner, subsequent to the appointment of the administrators on April 17, 1931, and prior to October 31, 1931, made demand upon them that they sell sufficient assets of the estate to pay the expenses of administration, and taxes; but the administrators failed to comply with this demand. If they had sold the American Rolling Mill Co. stock and the Columbia Gas & Electric Corporation stock between the time of their appointment on April 17, 1931, and July 17, 1931, the highest price they could have obtained for the former would have been $32.37½ per share, and for the latter, $39.37½ per share. The lowest selling price during this period for the American Rolling Mill stock was $15.12½ per share and for the Columbia Gas & Electric stock $20.62½ per share.

On June 18, 1932, the administrators entered into an agreement with the petitioner, under the terms of which the Fifth-Third Union Trust Co. agreed to lend petitioner enough money to pay the state inheritance tax, the additional Federal inheritance tax, and all the other expenses and debts of the estate not theretofore paid. Petitioner agreed to execute and deliver notes in the principal sum of the loans to the order of the trust company, with interest at 5 percent, payable when the principal was paid. As security for the payment of these notes petitioner agreed to deliver in pledge to the trust company all of the securities in the estate. The agreement provided that if petitioner should desire to sell any or all of the collateral before maturity of the notes, she should have the right to do so, and the trust company agreed that in every such instance it would make sales thereof upon her written request at the market prices of "listed" stocks and would apply the proceeds on account of the notes. Under the terms of this agreement petitioner obtained loans in the amount of $92,225.53 and on June 20, 1932, advanced this amount to the administrators.

On June 28, 1932, the Probate Court of Hamilton County, Ohio, entered an order directing the distribution in kind of the property of the estate to the person entitled thereto according to law, such

person being the petitioner. This order directed the distribution of the aforesaid 3,094 shares of the common stock of the American Rolling Mill Co. and the 5,932½ shares of the common stock of the Columbia Gas & Electric Corporation. On that date the common stock of the American Rolling Mill Co. had a fair market value of $4.12½ per share, and the common stock of the Columbia Gas & Electric Corporation had a fair market value of $6.12½ per share.

Petitioner made the following sales of part of the stock she acquired from the decedent's estate:

| Stock | Shares sold | Date of sale | Amount realized |
|---|---|---|---|
| Columbia Gas & Electric Corporation | 3,000 | Sept. 6, 1932 | $59,980.00 |
| American Rolling Mill Co | 1,594 | do | 27,004.32 |
| Columbia Gas & Electric Corporation | 2,000 | Apr. 29, 1933 | 29,589.94 |
| American Rolling Mill Co | 1,000 | Apr. 29, 1933 | } 26,503.33 |
| Do | 500 | July 13, 1933 | |

In her income tax returns for the years 1932 and 1933, petitioner reported losses on these sales, computed by taking the difference between the amounts realized and the fair market value of the shares at the time of the decedent's death, March 28, 1931. Respondent determined that the petitioner realized gain, taxable at normal and surtax rates, based upon the difference between the amounts realized and the fair market value of the shares on the date of distribution, June 28, 1932.

The petitioner makes several contentions which will be discussed in the order in which they are presented upon brief. Her first contention is that she acquired the stocks in question on March 28, 1931, upon the death of her husband; that they were sold for less than their fair market value at the time of acquisition, and hence that she did not realize any gain.

Section 113 (a) of the Revenue Act of 1932 provides that the basis for computing gain or loss upon property shall be the cost of such property with certain exceptions. The exception with which we are here concerned is that contained in subsection (5) shown in the margin.[1]

---

[1] SEC. 113. (a) (5) PROPERTY TRANSMITTED AT DEATH.—If personal property was acquired by specific bequest, or if real property was acquired by general or specific devise or by intestacy, the basis shall be the fair market value of the property at the time of the death of the decedent. If the property was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer. In the case of property transferred in trust to pay the income for life to or upon the order or direction of the grantor, with the right reserved to the grantor at all times prior to his death to revoke the trust, the basis of such property in the hands of the persons entitled under the terms of the trust instrument to the property after the grantor's death shall, after such death, be the same as if the trust instrument had been a will executed on the day of the grantor's death.

Prior to the enactment of the Revenue Act of 1928, the "basis" section did not contain the clause: "In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer." (See sec. 204 (a) (5), Revenue Acts of 1924 and 1926; sec. 202 (a), Revenue Acts of 1918 and 1921.) This is the clause which is especially applicable here. Preceding acts provided that such "basis" should be the fair market value of the property at the time of acquisition.

In *Brewster* v. *Gage*, 280 U. S. 327, the Supreme Court construed the words "time of acquisition" to mean the date of the death of the decedent and held that a residuary legatee acquired certain stocks under the will of his father on that date, and not at the time they were distributed to him. Petitioner insists that we should give the same construction to the words "time of distribution to the taxpayer" used in the 1928 and 1932 Acts which the Supreme Court in *Brewster* v. *Gage*, *supra*, gave to the words, "time of acquisition" used in the earlier acts. This we cannot do because, as the Supreme Court pointed out in the *Brewster* case, "The deliberate selection of language so differing from that used in the earlier acts indicates that a change of law was intended."

The petitioner cites and relies upon *Goodrich* v. *Edwards*, 255 U. S. 527, in support of her contention that she realized no gain upon the sale of her stocks in the taxable years. In that case a taxpayer acquired stock by purchase prior to March 1, 1913. The stock was sold in 1916 for a price in excess of its March 1, 1913, value, but less than the amount of taxpayer's investment therein. In holding that there was no taxable gain on this transaction the Supreme Court said:

It is thus very plain that the statute imposes the income tax on the proceeds of the sale of personal property to the extent only that gains are derived therefrom by the vendor, and we therefore agree  *  *  *  that since no gain was realized on this investment by the plaintiff in error no tax should have been assessed against him.

Petitioner argues that she is in the same situation as the taxpayer in *Goodrich* v. *Edwards*, *supra*, but we do not think so. In that case the Supreme Court held that the taxpayer realized no gain because the amount realized upon the sale of his shares of stock was not in excess of his capital investment. In the instant case petitioner acquired the stocks which she sold during the taxable years without any cost to her; she had no capital investment in them. Having invested nothing, she is not in the same position as the taxpayer was in *Goodrich* v. *Edwards*, *supra*. Her basis for gain or loss depends upon the will of Congress. It has prescribed such basis to be the fair market value of the property at the time it was distributed to

her. It could have provided that it be the cost of the stocks to the decedent; *Taft* v. *Bowers*, 278 U. S. 470; or their fair market value when *acquired* by her. *Brewster* v. *Gage*, *supra*. It did not select the latter basis because at the time of the passage of the 1928 Act there was some doubt as to the meaning of the term "date of acquisition." (Report No. 2, Committee on Ways and Means, 70th Cong., 1st sess., p. 18; Report No. 960, Committee on Finance, 70th Cong., 1st sess., p. 26.) In providing that the basis for gain or loss on personal property acquired by intestacy should be its fair market value at the time of distribution, the intention of Congress was to fix a time which would be definite and would not give rise to controversy. (Report of Committee on Ways and Means, *supra*.) The use of this basis in computing the gain realized by petitioner in the instant case does not result in the taxation of any part of her capital investment in the property sold because, as heretofore pointed out, it was acquired without cost to her. In our opinion, the respondent did not err in using the basis for gain or loss provided by Congress in section 113 (a) (5) of the Revenue Act of 1932, in computing petitioner's taxable gain from the sales of stock here involved.

Petitioner's second contention is that section 113 (a) (5), *supra*, is unconstitutional. The question of the constitutionality of section 113 (a) (5) of the Revenue Act of 1928, which is similar in all particulars to section 113 (a) (5) of the 1932 Act, was considered by this Board in *Harry G. Haskell*, 30 B. T. A. 855; affd. (C. C. A., 3d Cir.), 78 Fed. (2d) 869; certiorari denied, 296 U. S. 652. In that case it was said:

Congress has the power to provide that in determining gain or loss from the sale of property acquired by gift the basis shall be the cost of the property to the preceding donor. *Taft* v. *Bowers*, 278 U. S. 470; *Richard T. Keeley*, 15 B. T. A. 804; *Magdaline McKinney*, 16 B. T. A. 804. We therefore see no valid reason why Congress may not provide that in determining gain or loss from the sale of property acquired under a will the basis shall be its fair market value at the time of its distribution to the taxpayer, as was proposed by the respondent in this case and as has been sustained by us.

\* \* \* \* \* \* \*

\* \* \* We fail to see anything arbitrary or capricious in the classifications made by Congress in section 113 (a) (5) and find in them nothing that works unreasonable or unjust discriminations between taxpayers.

After the Circuit Court of Appeals affirmed our decision in this case on June 19, 1935, a motion for rehearing was filed by the taxpayer. The court, in a per curiam decision, dated September 17, 1935, said:

On further examination we find no sufficient reason for granting a rehearing. The question of the constitutionality of the Act was not overlooked and we find no reason to sustain that contention. So holding, the motion for rehearing is denied.

In view of the foregoing we are unable to agree with this contention of petitioner and must hold that section 113 (a) (5), *supra*, is constitutional. (Cf. *Ralph W. Harbison*, 26 B. T. A. 896.)

The next contention of the petitioner is that as to the sales of stock made by her during 1933, she is entitled to have the gain resulting therefrom taxed as capital net gain under the provisions of section 101 of the Revenue Act of 1932, this stock having been held by her for more than two years. The respondent concedes that this contention accords with the views expressed by the Supreme Court in *McFeeley* v. *Commissioner*, 296 U. S. 102, and petitioner's tax on these sales will be computed as provided in section 101 upon the recomputation under Rule 50.

The remaining contentions of petitioner are in the alternative. She contends that if the value at the date of distribution is to be taken as the basis, then we should find such "date of distribution" to be when distribution should have been made under Ohio law. She states that the ordinary practice in Ohio has long been to settle and distribute estates of an intestate at the end of six months after the appointment of the administrator, and that if the administrators had done their duty in this case, the basis for determining gain or loss would have been much higher than it was when the probate court, on June 28, 1932, entered the order of distribution. We do not deem it necessary or essential to the decision of the question involved in this proceeding, to discuss whether the administrators should have distributed the shares of stock to petitioner within six months after their appointment. We are concerned only with ascertaining the basis at the time of distribution in accordance with section 113 (a) (5), *supra*. We hold that the time of distribution was June 28, 1932. *Harry G. Haskell, supra; Arthur E. Braun, Trustee*, 29 B. T. A. 1161; *William R. Huntley*, 30 B. T. A. 931; *Harwood Robbins*, 33 B. T. A. 880; and *Emma W. Davis*, 32 B. T. A. 943. The fair market value of the stocks at that time (which value has been stipulated) is the basis which must be used in computing petitioner's gain.

The remaining alternative contention of the petitioner is that the sales "were, in substance, made by the administrator"; that they "should not be treated as her sales because she did not have complete control over the securities" either before or at the time of their sale; and that she did not have control of the proceeds after the sales. She argues that the arrangement by which the property was distributed—under an agreement by which a bank advanced to her the amount necessary to pay taxes and other expenses—merely shifted the claims against the estate to personal claims against her; that the securities were still retained by one of the administrators, and, notwithstanding the order of distribution, no "right of enjoyment

vested" in her. With this contention we can not agree. She has stipulated that she "sold" the stocks in question. They unquestionably belonged to her, and, subject only to the lien of the bank which had advanced funds to her, she could do with them as she pleased. She chose to sell a portion of such stocks and to liquidate her indebtedness; the balance of the proceeds derived from such sales belonged to her and could be used by her as she saw fit without accounting to anyone.

It is our conclusion that respondent did not err in determining a deficiency, but the amount thereof must be adjusted in accordance with the views herein expressed.

*Judgment will be entered under Rule 50.*