MARGARET E. B. FLEMING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78416. Promulgated October 27, 1937.

*Paul G. Rodewald, Esq.,* for the petitioner.
*H. D. Thomas, Esq.,* for the respondent.

OPINION.

LEECH: This proceeding arises upon the determination of a deficiency in income taxes against the petitioner for the calendar year 1931 in the amount of $3,990.12. The issues raised by the pleadings are: (1) the correct basis for determining the gain to petitioner from the sale, in 1931, of securities purchased in 1927 by a testamentary trust, and distributed to petitioner as remainderman after the death of the life beneficiary; (2) the correct basis for determining the gain to petitioner from the sale in 1931 of securities distributed

to her as a residuary legatee; (3) the correct amount of the deduction to which petitioner is entitled by reason of her charitable contributions during the taxable year, under the Revenue Act of 1928, section 23 (n); and (4) the amount of credit on income tax to which petitioner is entitled under the Revenue Act of 1928, section 33 and section 144 (d).

We find the facts as stipulated.

John Eaton died on September 16, 1911, a resident of Pittsburgh, Allegheny County, Pennsylvania, leaving a will which was duly probated, paragraph 16 of which is as follows:

16. I hereby direct that the other half of my estate be invested by my Executor herein named in trust for the benefit of my daughter, Lulu Eaton Brown, and her daughter, Margaret Eaton Brown, during the lifetime of said daughter Lulu Eaton Brown. On the death of my daughter, Lulu Eaton Brown, I give, devise and bequeath the said one-half part of my said estate to my granddaughter, Margaret Eaton Brown, and direct that same be paid to her when she arrives at the age of twenty-one (21) years.

Margaret Eaton Brown, referred to in the paragraph quoted, is the petitioner.

Lulu Eaton Brown died on August 12, 1929, on which date the petitioner was over 21 years of age, and thereafter the trustee under the will of John Eaton filed his account. Thereafter, on January 22, 1930, the Orphan's Court of Allegheny County, Pennsylvania, entered the following decree:

AND Now, to-wit, January 22nd, 1930, the account in this case having been filed and confirmed nisi and having been examined and audited by the Court, upon consideration thereof it is decreed that the account be confirmed absolutely, and that the funds in the hands of the accountant, to-wit, $3,608,407.63, be paid in accordance with the schedule of distribution hereto attached and made part hereof unless exceptions are filed within ten days.

PER CURIAM

Pursuant to that decree, the securities described in the schedule of distribution attached thereto were delivered and paid over to the petitioner on or after February 3, 1930. No exceptions either to the account or to the decree were ever filed.

During the year 1931 the petitioner sold certain of the securities delivered to her pursuant to the aforementioned decree. In her income tax return for the taxable year she used as the basis for determining her gains or losses from such sales amounts aggregating $1,100,488.75. In the notice of deficiency the respondent determined such basis to be the values of the respective securities on August 12, 1929, the date of the death of Lulu Eaton Brown, and determined such values to be in the aggregate amount of $1,074,265.

The securities thus sold were purchased on various dates in 1927 by the trustee under the will of John Eaton, the accountant whose

account was confirmed by the decree of January 22, 1930, at prices which were the fair market values thereof on the respective dates of purchase.

Louis Brown, the father of the petitioner, died on May 2, 1930, a resident of the city of Pittsburgh, Allegheny County, Pennsylvania, leaving a will, which was duly probated. By article X of that will the said Louis Brown devised and bequeathed his entire residuary estate to the petitioner, absolutely, if she should survive him. The executor of the will of Louis Brown duly filed his account, which was confirmed by the Orphans' Court of Allegheny County, Pennsylvania, by the following decree entered January 28, 1931:

And now, to wit, January 28, 1931, the account in this case having been filed and confirmed nisi, and having been examined and audited by the Court, upon consideration thereof, it is decreed that the account be confirmed absolutely, and that the funds in the hands of the accountant, to wit, $1,705,685.94, be paid in accordance with the schedule of distribution hereto attached and made part hereof, unless exceptions be filed within ten days.

PER CURIAM

Pursuant to this decree, the securities described in the schedule of distribution attached thereto were delivered to the petitioner on or after February 9, 1931. No exceptions either to the account or the decree were ever filed, and time for filing exceptions was not extended by the court.

At all times material, the procedure in the Orphans' Court of Allegheny County, Pennsylvania, in connection with the accounting for and distribution of property of an estate or trust was as follows: The executor or other accountant prepared an account of his administration and filed it with the clerk of the court, who thereupon advertised the account, and all parties in interest had a certain time within which to file exceptions thereto. The account, together with the exceptions, if any, was audited by the court at a public hearing held by one of the judges. The auditing judge, after passing upon any exceptions to the account, then entered a decree settling and confirming the account absolutely, or as restated by the court. The decree usually provided that the funds in the hands of the accountant be paid in accordance with a schedule of distribution attached to and made part of the decree, unless exceptions should be filed within ten days. The decrees of January 22, 1930, and January 28, 1931, referred to and quoted from above, were in the usual form of decree. Such a decree of the Orphans' Court is absolute unless exceptions are filed within ten days, unless the time be extended by the court. Under the Pennsylvania practice existing in 1930 and 1931 it was, and now is, necessary that exceptions be filed in order that an appeal may be taken from such decree. Under such decrees the distribution can be, and generally is, made immediately after the expiration of

the ten days allowed for exceptions if no exceptions are filed within that period.

Included among the securities paid and distributed to the petitioner pursuant to the decree of January 28, 1931, were 887 shares of common stock of Bethlehem Steel Corporation, which, on February 9, 1931, had a fair market value of $48,674. The fair market value of those shares on January 28, 1931, was $44,350, which value the respondent used in the deficiency notice, as the basis for determining petitioner's gain or loss upon the sale thereof during the year 1931.

During the taxable year 1931 the petitioner contributed the sum of $10,000 to the Diocese of Pittsburgh of the Protestant Episcopal Church and the sum of $3,615 to the Conference of Church Workers Amongst the Deaf. Those contributions or gifts were made exclusively to one or more of the uses described in section 23 (n) of the Revenue Act of 1928.

In the year 1931 the petitioner received interest upon obligations of corporations containing contracts or provisions commonly known as tax-free covenants of the character prescribed in section 144 (a) (1) of the Revenue Act of 1928, to the respective sellers of which she had paid at the time of purchase amounts aggregating $2,834.24 for interest accrued thereon to the date of sale. In her return for the year 1931 the petitioner excluded that amount of $2,834.24 received by her as interest upon those obligations from her income but did not claim, and has not been allowed, credit against the tax under section 33 of the Revenue Act of 1928 for taxes withheld at the source under section 144 of that act.

*Issue No. 1.*—Petitioner contends that her basis for computation of gain or loss on her sales of the securities distributed to her by the trustee under the Eaton will was their cost to the testamentary trust.

The Revenue Act of 1928 is controlling. The respondent argues that section 113 (a) (5) is applicable, by reason of the sentence therein which is:

\* \* \* In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer. \* \* \*

Accordingly, in computing the contested deficiency, respondent used as such basis the value of the securities when, he says, they were distributed to petitioner. This position is supported by the report of the Senate Committee on Finance, accompanying the Revenue Act of 1928, when it was introduced in the Senate. 70th Cong., 1st sess., Report No. 960, p. 26.

Petitioner denies the existence of the authority in the quoted sen-

tence for such treatment, since, she says, she acquired these securities, not by will or intestacy, but by her purchase through the trustee, and, therefore, their cost to the testamentary trustee is her basis. Revenue Act of 1928, sec. 113 (a).[1]

It may well be that these securities were purchased by the testamentary trust, and that the title to them was then acquired by petitioner, remainderman. *George Emlen Roosevelt, Trustee*, 28 B. T. A. 194. Cf. *Brewster* v. *Gage*, 280 U. S. 327; *McFeely* v. *Commissioner*, 296 U. S. 102, reversing 74 Fed. (2d) 1017. However, our immediately pertinent question is not *when* but *how* the petitioner, remainderman under the will of her father, not the trustee, acquired these securities. And, unless upon some theory of representation or agency of the trustee for the remainderman, petitioner, we see no reason for the conclusion necessary to petitioner's position here, that the mode of acquisition by the trustee was that of the petitioner. But the testamentary trustee was not the agent of petitioner, the remainderman. The trustee was the creature of the decedent, made so by his will. It was thus designated as the continuing instrumentality of the decedent to execute his and not the will of the petitioner, remainderman. She neither controlled the terms of the trust nor its res until distributed to her. All she had before that distribution was a right to share therein in accordance with the terms of the testamentary trust, the right to which vested in her at the death of decedent. *McFeely* v. *Commissioner, supra; Brewster* v. *Gage, supra.* Thus, it was by virtue of the provisions of the testamentary trust created by the will of her father, that petitioner was the remainderman under that trust and received the securities in question. They may have been purchased by the trustee, but the petitioner acquired them by will. This would seem inherent in our decision in *George Emlen Roosevelt, Trustee, supra*, where it was held that the basis to the beneficiary of such property purchased by the trustee after the death of the testator and later distributed to the beneficiary, was controlled by section 204 (a) (5) of the Revenue Act of 1926. We, therefore, conclude that the quoted provision of section 113 (a) (5) of the Revenue Act of 1928 applies.

Petitioner contends, in the alternative, that, assuming section 113 (a) (5) does thus apply, the date of distribution within the purview of that section is the effective date of the decree of distribution of the Orphans' Court of Allegheny County, Pennsylvania, which was February 3, 1930. It is the position of the respondent that the date of distribution in such circumstances as are here present was

---

[1] SEC. 113. BASIS FOR DETERMINING GAIN OR LOSS.

(a) *Property acquired after February 28, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; * * *

either August 12, 1929, the date of the death of the life tenant, or January 22, 1930, the actual date of entry of the *nisi* decree by the Orphans' Court of Allegheny County in the audit of the account of the trustee under the will of petitioner's father.

In considering this question, since we have held petitioner, remainderman, acquired the Eaton securities by will, we think the facts present essentially the case of a testamentary trust for the life of petitioner's mother and a bequest of the corpus to petitioner on the death of the mother.

But, in such a situation, the mere falling in of the life estate of the mother does not effect a "distribution" within the contemplation of the quoted provision of section 113 (a) (5), *supra*. *Van Nostrand* v. *United States*, 18 Fed. Supp. 295. The normal and undoubted meaning of the term as there used is "separation or segregation from the trust estate so that it [the bequeathed property] no longer forms any part or parcel thereof." *Willcuts* v. *Ordway*, 19 Fed. (2d) 917. See also *Mason* v. *Routzahn*, 275 U. S. 175; *Fidelity & Columbia Trust Co.* v. *Lucas*, 66 Fed. (2d) 116; *Matthiessen* v. *United States*, 65 Ct. Cls. 484 (2 B. T. A. 921). Such separation or segregation did not occur here by the mere entry of the *nisi* decree. Since the record contains no evidence of capricious or unnecessary delay in securing the decree of distribution (*First National Bank of Birmingham, Guardian*, 31 B. T. A. 847), we think the disposition of this issue is controlled by *Arthur E. Braun, Trustee*, 29 B. T. A. 1161. Upon the authority of that decision, we conclude the date of distribution here was the effective date of the decree of the Orphans' Court, mentioned above, to wit, February 3, 1930.

*Issue No. 2.*—The correct basis of the petitioner for the securities involved in the second issue is February 9, 1931, the effective date of the decree of the Orphans' Court of Allegheny County, Pennsylvania, authorizing the distribution of those securities. *Arthur E. Braun, Trustee, supra.*

*Issue No. 3.*—On the third issue, we hold that petitioner is entitled to an additional deduction of 15 percent of the amount by which her income may be increased over that reported in her return, in the computation under this opinion under Rule 50, since the amount of the contributions as stipulated exceeded 15 percent of the aggregate income asserted in the deficiency notice. Revenue Act of 1928, sec. 23 (n). *Helvering* v. *Bliss*, 293 U. S. 144.

*Issue No. 4.*—Although apparently not in dispute, the stipulation does not reveal whether petitioner returned as income any interest received on bonds upon which tax was withheld at the source. We think she is entitled to a credit on contested income tax, of the

amount of such tax withheld at the source on the bond interest, only, which is included in her taxable income, as such. Revenue Act of 1928, sec. 33,[2] and sec. 144 (d).[3]

*Decision will be entered under Rule 50.*

---

[2] SEC. 33. TAXES WITHHELD AT SOURCE.

The amount of tax withheld at the source under section 144 shall be allowed as a credit against the tax.

[3] SEC. 144. WITHHOLDING OF TAX AT SOURCE.

(d) *Income of recipient.*—Income upon which any tax is required to be withheld at the source under this section shall be included in the return of the recipient of such income, but any amount of tax so withheld shall be credited against the amount of income tax as computed in such return.