MARJORIE K. CAMPBELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84639.   Promulgated May 19, 1939.

*R. M. Andrews, Esq., John L. Kenefick, Esq.*, and *Ernest J. Brown, Esq.*, for the petitioner.

*W. H. Schwatka, Esq.*, and *E. L. Updike, Esq.*, for the respondent.

### OPINION.

MURDOCK: The Commissioner determined a deficiency of $86,937.47 in the income tax of the petitioner for the calendar year 1933. The Board adopts as its findings of fact the stipulation filed by the parties, together with the respondent's exhibit A.

### ISSUE I.

The petitioner disposed of certain securities in the taxable year which she had received as a distribution from a trust set up by her father's will. The Board is asked to determine her basis for gain or loss on those securities. She contends that the basis was the fair market value of the securities at the time they were distributed to her from the trust, whereas the Commissioner contends that her basis was the same as that of the trust, that is, cost to the trust of those purchased by the trust and fair market value at the date received by the trust of those which were transferred to the trust by the decedent's executors.

Seymour H. Knox, the father of the petitioner, died on May 16, 1915. His will provided that the residuary estate should be divided into four parts and that one part, consisting of 20 percent of the whole, should be placed in trust for this petitioner. The will provided with respect to the portion placed in trust for this petitioner that it was so placed for the following uses and purposes:

To receive, hold and, from time to time, invest and reinvest the same, and to collect the rents, income, issues and profits on the property from time to time constituting such trust fund and to pay over so much of the net income arising therefrom, as to my said trustees shall seem wise and proper toward the support, maintenance and education of my daughter, MARJORIE KNOX, until she shall arrive at the age twenty-one (21) years, and to accumulate the balance of the income during her minority for her benefit, and to pay over the accumulated income to her when she shall arrive at the age of twenty-one (21) years, and thereafter to pay over the entire net income to my said daughter, Marjorie Knox, until she shall arrive at the age of twenty-eight (28) years, at which time, I give, devise and bequeath to my said daughter, Marjorie Knox, one-half (½) of the property then constituting said trust fund and I direct my said trustees to pay over the net income on the remaining one-half (½) of said trust fund until she shall arrive at the age of thirty-five (35) years, at which time I give, devise and bequeath the remaining part of said trust fund to my said daughter, MARJORIE KNOX, and to her heirs and assigns forever.

In the event that my said daughter, Marjorie Knox, shall die before reaching the age of thirty-five (35) years, I give, devise and bequeath any part or por-

tion of said trust fund, which has not then been paid over to her, or to the possession of which at the time of her death she was not entitled, unto the issue of said Marjorie Knox, if any, surviving her, to be divided among them, share and share alike. And in case there be no issue her surviving, then I give, devise and bequeath said trust fund unto her heirs.

It further provided that the trustees should have full power to sell, exchange, or dispose of any property in the trust fund, and expressed the wish of the testator that within five years after his death, or as soon thereafter as possible, 50 percent of the value of the trust fund should be invested in securities constituting legal investments for executors or trustees or in unencumbered real property.

The trust was formally set up on July 1, 1921, and the executors on that date transferred to the trustees the property as provided in the will. The petitioner attained the age of twenty-eight years on July 10, 1928, and received on that date one-half of the property then constituting the trust fund. Certain of the securities which she received at that time were sold during 1933 and certain of the bonds matured and were paid during 1933. Some of the securities sold by her had been held by her father at the time of his death, others had been purchased by the executors, and still others had been purchased by the trustees. The Commissioner, in his determination of the deficiency, used as the basis for gain or loss for securities owned by the decedent at the time of his death, and for securities purchased by the executors, the fair market value thereof on July 1, 1921, and, in the case of securities purchased by the trustees, the cost thereof to the trustees.

The petitioner correctly contends that the proper basis is the fair market value of the securities on July 10, 1928, when they were distributed to her pursuant to her father's will. She acquired the property in question by the will of her father. It was personal property and was not acquired by specific bequest. Section 113 (a) (5) of the Revenue Act of 1932 provides that the basis for gain or loss on such property is the fair market value of the property at the time of the distribution to the taxpayer. Section 113 (a) (4) by its express terms does not apply. Neither does the general rule of (a) apply. The question presented here has been decided adversely to the contention of the respondent in a number of cases, several of which have been reviewed and affirmed by the appellate courts. *Ralph W. Harbison*, 26 B. T. A. 896; *Mary Colgate*, 27 B. T. A. 506 (both of the above were reversed on other grounds, 293 U. S. 144); *Lillian McDonald Brinton*, 28 B. T. A. 472; *Harry G. Haskell*, 30 B. T. A. 855; affd., 78 Fed. (2d) 869; *James W. Arrott, Jr.*, 34 B. T. A. 133; *Robert A. Taft, Trustee*, 34 B. T. A. 603; affd., 101 Fed. (2d)

1007; *Bessie C. Williamson*, 34 B. T. A. 668 and 924; affd., 100 Fed. (2d) 735; *Margaret E. B. Fleming*, 36 B. T. A. 773; *Richard Van Nest Gambrill*, 38 B. T. A. 981; *Van Nostrand* v. *United States*, 18 Fed. Supp. 295; affd., 94 Fed. (2d) 410; *Commissioner* v. *Libbey*, 100 Fed. (2d) 458. The respondent has filed a lengthy and thoughtful brief, but he does not distinguish the present case from the cases just cited, he is unable to cite any authority which was not fully considered in those cases, and he makes no argument which might cause the Board to change its position. Therefore, we follow the cited cases and hold for the petitioner.

## Issue II.

The petitioner had certain securities which she had purchased prior to July 10, 1928. She received from the trustees on July 10, 1928, some more of the same kind of shares. She sold some of the shares in 1933. She applied the "first in, first out" rule in making up her return for 1933 and regarded her individual purchases as the stock first purchased, used the basis applicable to those shares until it was exhausted, and then used as the basis for the remaining shares sold the fair market value of the shares on July 10, 1928. The Commissioner, in determining the deficiency, held that the first shares purchased were those received from the trustees since, as a matter of fact, they were purchased by the trustees prior to the date upon which the petitioner had purchased her similar shares.

The parties are in agreement that the first in, first out rule must be applied, since the shares which the petitioner sold can not be identified as those purchased at any particular time. They disagree, however, as to which stock was the "first in." The rule appears in the regulations, not in the statute, and provides that "when shares of stock in a corporation are sold from lots purchased at different dates or at different prices and the identity of the lots can not be determined, the stock sold shall be charged against the earliest purchases of such stock." Neither party has suggested any statutory provision which has any bearing upon the question. There are provisions in section 101(c)(8) defining capital assets which state that the period for which a taxpayer has held property shall include, under certain circumstances, the period during which it was held by a prior owner. None of those provisions, either by their purpose or by their express wording, would have any application to the stock in question. The rule should receive a practical and reasonable application. It means purchased by the particular taxpayer. A person should not be deemed to have purchased property prior to the time that he purchased it or acquired the title to it, unless there is some express statutory provi-

sion to that effect. The estate of the decedent and the trust are governed by the laws of the State of New York. The petitioner has pointed out that she did not acquire any vested interest in the trust property until it was distributed to her on July 10, 1928. Certainly she had not acquired the particular shares and she did not hold those shares prior to that date. The Commissioner has apparently proceeded on the theory that purchase by the trust was, for tax purposes, purchase by the petitioner. He has attributed to the petitioner the same basis that the trust would have had and he has attributed to the petitioner the period of holding that the trust had. He may have been consistent in that. The trust, however, was a separate taxable entity and must be kept separate from this petitioner in the absence of any statutory provision to the contrary. It had complete ownership of these shares up to the very moment of the distribution. We have held that the basis for gain or loss on the shares was not that of the trust, but was the fair market value of the shares at the time they were distributed by the trust to the petitioner. The second contention of the respondent must fall with the first. The date of "purchase" of those shares by the petitioner for the purpose of applying the first in, first out rule was July 10, 1928. Cf. *Helvering* v. *San Joaquin Fruit & Investment Co.*, 297 U. S. 496. Decision on this point is for the petitioner.

## Issue III.

The petitioner purchased $25,000 face amount of the corporate stock of the city of New York on December 29, 1932. Such so-called stock is, for all present purposes, the equivalent of bonds. It was issued on May 1, 1907, will mature on May 1, 1957, and paid interest at the rate of 4½ percent semiannually on May 1 and November 1. She purchased a like amount of somewhat similar stock on the same day, the difference being that the second lot were issued on November 1, 1908, and will mature on November 1, 1957. Each purchase consisted entirely of registered securities. She sold both lots of stock on December 22, 1933.

She purchased on the following day $10,000 face amount of the corporate stock of the city of New York issued May 1, 1907, maturing on May 1, 1957, paying interest at the rate of 4½ percent semiannually on May 1 and November 1. She concedes that this purchase was of substantially identical stock or securities and that the wash sales provision of section 118 of the Revenue Act of 1932 applies.

She purchased on December 23, 1933, an additional $50,000 face amount of the corporate stock of the city of New York. The stock involved in this purchase was issued on March 1, 1913. It matures on

March 1, 1963. Interest at the rate of 4½ percent thereon was payable on March 1 and September 1 of each year. These bonds were coupon bonds. The Commissioner, in determining the deficiency, held that they were substantially identical securities to those sold on the previous day and he disallowed the entire loss which the petitioner realized from the sales made on December 22.

The petitioner contends that there was no wash sale in regard to $40,000 face amount of the bonds which she sold on December 22 because the $50,000 face amount of bonds purchased on December 23 were not substantially identical stock or securities to any of those sold. She points to the following differences between the bonds:

1. A difference in the date of issuance—five years and ten months in the one case and four years and five months in the other.

2. A difference in date of maturity—five years and ten months in one case and five years and five months in the other.

3. A difference in the dates upon which interest was paid, from May and November to March and September.

4. The bonds sold were registered, while those purchased bore coupons.

5. A difference of 1⅛ in the market price of the bonds on December 23.

She cites I. T. 2672, C. B. XII–1, p. 72, wherein the Treasury ruled that bonds having different dates of issue, different dates of interest payments, different dates of maturity, and different unit values, although otherwise similar, are not substantially identical securities within the meaning of section 118 of the Revenue Act of 1932. The Commissioner cites no authority which is directly in point or even closely analogous. His argument is not supported by the facts and is mostly irrelevant. The petitioner points out that in *Marie Hanlin*, 38 B. T. A. 811, the Board entered into a lengthy discussion of the meaning of "substantially identical stock or securities" and went so far as to hold that bonds having a difference of only two and one-half years in dates of maturity, but redeemable at the option of the obligor at any time after about six months, were substantially identical, but said:

If there was an unconditional positive difference of two and one-half years in the maturity or redeemability of the bonds a more difficult question as to the substantiality of the difference might arise.

The differences between the bonds here in question were greater than the differences between the bonds involved in the *Hanlin* decision, and that difference serves to distinguish the two cases. Section 118 does not apply and the petitioner is entitled to deduct the loss sustained from the sale of $40,000 face amount of the bonds.

Reviewed by the Board.

*Decision will be entered under Rule 50.*